## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARROD BECK, KEERTHI REDDY, and ERIN GALLOWAY, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:04-CV-01391 JR |
| TEST MASTERS EDUCATIONAL SERVICES, INC., | |
| Defendants. | |

## MOTION FOR ORDER REMANDING CASE TO THE DISTRICT OF COLUMBIA SUPERIOR COURT

Plaintiffs Jarrod Beck, Keerthi Reddy and Erin Galloway hereby respectfully move the Court for entry of an Order remanding this case back to the District of Columbia Superior Court. The grounds for this motion are set forth in the Memorandum Of Points And Authorities filed herewith. A proposed Order also is filed herewith.

Pursuant to Local Civil Rule 7.1(m), counsel for Plaintiffs contacted counsel for Test Masters Educational Services, Inc. ("TES") to ask for consent to this motion. Counsel for TES indicated that TES opposes the motion.

Pursuant to Local Civil Rule 78.1, Plaintiffs request an oral hearing on this Motion.

Dated:  September 3, 2004

Respectfully submitted,

Hassan A. Zavareei
D.C. Bar No. 456161
TYCKO, ZAVAREEI & SPIVA LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900

*Attorney For Plaintiffs Jarrod Beck,
Keerthi Reddy, and Erin Galloway*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JARROD BECK, KEERTHI REDDY,
and ERIN GALLOWAY,

          Plaintiffs,

      v.

Civil Action No. 1:04-CV-01391

JR

TEST MASTERS EDUCATIONAL
SERVICES, INC.,

          Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER REMANDING CASE TO THE DISTRICT OF
COLUMBIA SUPERIOR COURT**

    Plaintiffs Jarrod Beck, Keerthi Reddy, and Erin Galloway respectfully submit this

memorandum of points and authorities in support of their Motion For Order Remanding Case To

The District Of Columbia Superior Court.

**I.
BACKGROUND**

    This is a lawsuit brought by three D.C. area college students who attempted to take a Law

School Admissions Test ("LSAT") preparation course in the District of Columbia from a

nationally known company (Robin Singh Educational Services, Inc., d/b/a "TestMasters") that

has been doing business in the district for over four years, but were tricked into taking an

imposter course by a company using the same name—defendant Test Masters Educational

Services, Inc. ("TES"). Plaintiffs' bring their claims solely under District of Columbia law,

principally the D.C. Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3901,
*et seq.*

Confused by the similarity of the two companies' names, Plaintiffs erroneously contacted
TES representatives by telephone to inquire about an LSAT course. *See* Complaint, ¶¶ 9-26.
During these separate conversations, each of the Plaintiffs made explicit statements to
representatives of TES that made it clear that they were interested in the well-established and
nationally-known TestMasters company that has taught LSAT courses in the District, College
Park, Maryland, and Arlington, Virginia for the past four years. *Id.* They had never heard of the
company that they accidentally reached, which had just started offering LSAT courses in the
preceding weeks. *Id.* TES'S first and only LSAT course had commenced just weeks earlier in
Texas. TES had never conducted any LSAT courses outside Texas, let alone in the District. *Id.,*
¶¶ 11, 16, 18. In the face of the Plaintiffs' statements that they wanted to take the TestMasters
course because it was recommended to them by friends who had taken the course in markets
where TES had never offered an LSAT course (such as Colorado, Ohio, Maryland and the
District), TES willfully failed to inform the students that they had called the wrong company. *Id.*
Indeed, at least six of the eight students who attended the TES course (including the three
plaintiffs), intended to take a TestMasters course and believed that TES deliberately deceived
them. *Id.*, ¶¶ 20-22.

Plaintiffs properly brought their case, which alleges violations of D.C. statutes and
common law, in the Superior Court. But as part of an effort to consolidate this case with
litigation pending in Texas—and thereby deny Plaintiffs their choice of forum—TES has
improperly removed Plaintiffs' case to this Court. TES raises three arguments for why the

amount in controversy exceeds the jurisdictional limit of $75,000; they are each devoid of any legal or factual merit.

First, TES attempts to aggregate the claims not only of the Plaintiffs, but of the "over 100" other potential students that it communicated with by phone and internet. This attempt fails because (1) aggregation of claims of this sort is improper and expressly disallowed under crystal clear precedent from the Supreme Court, (2) TES never explains why any of these "100 potential students" might have any connection to this litigation, and (3) TES has not provided sufficient evidence that the aggregation of claims, even if permissible, would result in an amount in controversy of more than $75,000.

Second, TES relies on the supposition of a TES officer that he "believes" the costs of complying with injunctive relief "would exceed $75,000." But this Court, and the Courts of Appeals in numerous other Circuits have held that a defendant *may not* rely upon the supposed costs it would incur to comply with an injunction in order to establish the jurisdictional amount in controversy, particularly where (as here) the case is brought by multiple plaintiffs who seek monetary damages that do not exceed the jurisdictional amount in controversy.

Third, TES claims—without any support at all—that "it is apparent that the attorneys' fees required to litigate this case to trial will exceed $225,000." But attorneys fees are not, as a general rule, to be included as part of the "amount in controversy." And even if they were, TES has not submitted any evidence, other than its own counsel's speculation, that Plaintiffs' fees would indeed exceed $75,000.

## II.
## ARGUMENT

Because federal courts are "courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), "it is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction," *id.* (internal citations omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Thus, upon the filing of a motion to remand, the burden is on the removing party—here, TES—to show that the requirements for removal have been met. *See, e.g., In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp.2d 31, 35 (D.D.C. 2000); *Johnson-Brown v. 2200 M Street LLC*, 257 F. Supp.2d 175, 177 (D.D.C. 2003).

In keeping with these bedrock principles, a notice of removal must clearly demonstrate the right to removal. The Court "must strictly construe the notice of removal and resolve all doubts against removal." *Shadley v. Miller*, 733 F. Supp. 54, 55 (E.D. Mich. 1990); *see also Jonson-Brown*, 257 F. Supp.2d at 177 ("Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand."); *Fuller v. Exxon Corp.*, 131 F. Supp.2d 1323, 1327 (S.D. Ala. 2001) ("Unresolved doubts concerning the propriety of the removal must be resolved by remanding the action to state court."); *Rivers v. International Matex Tank Terminal*, 864 F. Supp. 556, 558 (E.D. La. 1994) ("It is important to remember that any ambiguities are construed against removal, because the removal statute should be strictly construed in favor of remand."); *Stemmons v. Toyota Tsusho America, Inc.*, 802 F. Supp. 195, 197 (N.D. Ill. 1992) ("ambiguities are resolved against removal when doubt exists as to jurisdiction"). Thus, if the allegations of the Notice leave doubt as to the propriety of removal, then remand is required.

Moreover, although a notice of removal may be amended to add necessary allegations, such amendments must occur before the expiration of the 30-day period permitted for the filing of a notice of removal. *See* 28 U.S.C. § 1446(b) (notice of removal must be filed within 30 days of service of complaint); 14C C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3733 at 358-61 (3d ed. 1998) (after expiration of 30-day period, "[c]ompletely new grounds for removal jurisdiction may not be added and missing allegations may not be furnished"); *Fuller*, 131 F. Supp.2d at 1327 (after expiration of 30-day period, removing party may not "assert additional grounds of jurisdiction not included in the original pleading"); *Wyant v. National R.R. Passenger Corp.*, 881 F. Supp. 919, 924 (S.D.N.Y. 1995) ("A defendant may not amend its notice of removal after this thirty-day period to remedy a substantive defect in the petition."); *Castle v. Laurel Creek Co., Inc.*, 848 F. Supp. 62, 66 (S.D. W.Va. 1994) (after expiration of 30-day period, no "substantial and material" amendments are permitted); *Hubbard v. Tripp*, 611 F. Supp. 895, 896-97 (E.D. Va.1985) (after expiration of 30-day period, a party may "cure defective allegations" but may not "supply missing allegations") (internal quotations omitted).

Here, the 30-day period has now expired. Accordingly, TES cannot now make substantive amendments to the Notice, and this Court's consideration of the propriety of removal must be based upon, and limited to, the allegations of the Notice as filed. If the Notice fails to allege facts necessary for this Court to determine whether it has jurisdiction, then remand is required.

TES removed this case based upon an assertion that the Court has diversity jurisdiction. Notice, ¶ 3. Thus, TES has the burden of demonstrating that the amount in controversy exceeds $75,000. But as discussed below, remand is required here because TES's Notice is based upon both incorrect legal principles and inadequate evidence.

### A.    Aggregated Damages Cannot Provide A Basis For Diversity Jurisdiction

TES does not argue that any of the Plaintiffs individually suffered more than $75,000 in damages. Rather, TES seeks to aggregate not only the damages of the plaintiffs but the potential damages of all consumers who have been harmed by TES's deceptive practices. Notice, at ¶¶ 9-11. This type of aggregation is not permissible. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973) (upholding longstanding "rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts . . . ."); *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) ("the claims of multiple plaintiffs may not be aggregated for the purpose of meeting the [$75,000] threshold for diversity jurisdiction.") Thus, TES's assertions that that its website has received over 100 visits and that TES has communicated by phone with more than 100 potential students during 2004 is irrelevant. Even assuming each of those calls and website visits pertained to TES's D.C. course offering—and nothing in TES's submission supports that assumption—the Court must only look to the potential damages associated with each individual consumer who has been misled in determining whether the jurisdictional threshold has been met. Having provided no basis for finding that each such consumer's damages would exceed $75,000, defendant cannot rely upon an aggregation of each consumer's damages to reach the threshold. *Id.*

Resort to speculation about the potential punitive damages available in this case does not improve TES's claim to meet the jurisdictional threshold, because each individual plaintiff's and injured consumer's punitive damages must be examined individually. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) ("The punitive damages claim does not satisfy the amount in controversy requirement, because when the $10,000,000 class claim for punitive damages is divided among the alleged 39,000 class members, as *Lindsey* requires for amount in controversy purposes, each member's share of the claim is approximately $256."). TES seeks to

lump the seven injured consumers specifically named in Plaintiffs' complaint together and multiply their purported *total* potential punitive damages together to reach the jurisdictional threshold. Notice, at ¶ 13. But punitive damages would be allocated individually by plaintiff or consumer, and therefore, the Court must look to see whether any individual plaintiff or consumer could potentially collect more than $75,000 in punitive damages. Given that the cost of the course about which students were deceived was approximately $1,300, it is difficult to conceive, either based on the treble-damage provision in the D.C. Consumer Protection Act, or based on the presumptive "maximum" punitive damages announced in *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), how any individual consumer could be awarded more than $75,000 in punitive damages. And, given that defendant has the burden to show that its potential exposure for punitive damages is realistically greater than $75,000 per student, this case must be remanded, because defendant has not even attempted to make such a showing. TES's failure to provide any such "competent proof" that would establish a basis for jurisdiction "by a preponderance of evidence," is fatal to its claim of federal jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

Finally, TES's assertion that plaintiffs' claim for disgorgement exceeds $75,000 also must be rejected. First and foremost, the rule against aggregation applies with equal force to claims for unjust enrichment. *See Pierson v. Source Perrier,* 848 F. Supp. 1186, (E.D. Penn. 1994) (holding that aggregating claims for disgorgement of profits "would eviscerate [the rule] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold") (quotations omitted) (alterations in original). Second, TES appears to be improperly including all of its profits, including those derived outside of the District of Columbia, to

7

determine the amount of disgorgement that would be required if plaintiffs prevail.  But TES has

provided absolutely no basis for concluding that such profits exceed $75,000.

To the contary, Plaintiffs have alleged that TES has only taught one LSAT course in the

District to approximately eight students.  *See* Complaint, ¶ 6.  And there is no way TES has

derived more than $75,000 in profits (or even revenues) from that number of students, even

assuming, *arguendo*, that such profits could be aggregated for purposes of meeting the

jurisdictional threshold.  TES's Notice of Removal was its opportunity to establish for

jurisdictional purposes that it has indeed earned more than $75,000 in profits as a result of its

misleading business practices in the District.  But Israni's declaration falls far short of the mark.

Israni never states that TES has taught any LSAT courses in the District other than the one

populated with students who intended to take the TestMasters course.  *See* Israni Decl., *passim.*

Instead, Israni declares that TES "offered test preparation classes," in the area, and that some of

its courses were "advertised to and attended by District of Columbia residents."  *Id.*, ¶ 8.  This is

insufficient proof of anything.  Instead, Israni's statement about TES's courses in the D.C. area is

merely a self-serving and unverifiable contention that Plaintiffs believe that they will disprove

during discovery.

To the extent that the Court believes that TES's profits may be aggregated, and may form

the basis for the amount in controversy, Plaintiffs respectfully demand that TES present credible

and reliable proof in support of its position that it has earned over $75,000 in profits attributable

to the misstatements and misleading conduct that is the subject of this litigation.  *See National*

*Organization for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 102-103 (D.D.C. 1985)

("If a removal is effected, the plaintiff may, by a motion to remand . . . take issue with the

statements in the petition.  If he does, the issues so arising must be heard and determined by the

District Court . . . and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding.") (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

**B.    Removal May Not Be Based On TES'S Speculative Estimate Of The Cost To Comply With Hypothetical Injunctive Relief**

Although the D.C. Circuit has not clearly addressed the issue, it has suggested in dicta in three separate cases that for purposes of determining the amount in controversy in an action only for injunctive relief that a court may look to the cost of the injunctive relief from the perspective of the plaintiff or the defendant. *See Tatum v. Laird*, 444 F.2d 947, 951 n.6 (D.C. Cir. 1971) (noting that although it is an unsettled question, that "where *purely injunctive relief* is sought, the amount in controversy may be measured by either 'the value of the right sought to be gained by the plaintiff . . . (or) the cost (of enforcing that right) to the defendant'") (citations omitted) (alterations in original) (emphasis added).[1]

In a case such as the one at bar, however, which involves claims for both monetary and injunctive relief (not just "purely injunctive relief" as described in *Tatum*), this Court has explicitly held that the costs that a defendant may incur to comply with an injunction may not be used to satisfy the amount in controversy. *National Organization of Women v. Mutual of Omaha Insurance Co.*, 612 F.Supp. 100, 108 (D.D.C. 1985). The court in *NOW* found that "to allow the defendant's view test to be used whenever injunctive relief is sought along with damages" would

---

[1] *See also Smith v. Washington*, 593 F.2d 1097, 1099 n.3 (D.C. Cir. 1978) (stating that the court may look to either "the value of the right that plaintiff seeks to enforce. . . or to the cost to the defendants to remedy the alleged denial," but basing decision on value of plaintiffs' constitutional rights); *Committee for GI Rights v. Callaway*, 518 F.2d 466, 472-73 (D.C. Cir. 1975) (observing that amount in controversy can be valued from perspective of plaintiff or defendant, and basing its determination of amount in controversy on the value to plaintiff).

undermine the rule against aggregation. *Id.*[2]  For this reason, "[t]his court will not apply the

defendant's view test to this diversity action which seeks both damages and injunctive relief." *Id.*

Under the clear precedent of *NOW*, the cost of injunctive relief from the perspective of TES is

completely irrelevant because Plaintiffs seek both injunctive and monetary relief.[3]

Even, assuming, *arguendo,* that TES's cost to comply with an injunction might

theoretically have some relevance to the amount in controversy, TES has not provided any

reliable evidence that this cost would exceed $75,000. In its Notice of Removal, TES claims that

---

[2] *See also Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1420 (2d Cir. 1997) (stating that valuing cost of injunction from perspective of defendant in case seeking primarily monetary damages would "eviscerate" Supreme Court precedent prohibiting aggregation of claims); *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1050 (3d Cir.1993) ("In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate [Supreme Court precedent] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold."); *Snow v. Ford Motor Co.*, 561 F.2d 787, 791 (9th Cir. 1977) (holding that valuing injunctive relief from perspective of defendant in case involving claims for monetary and injunctive relief by multiple plaintiffs would constitute an end-run around rule against aggregation).

[3] Although the D.C. Circuit repeatedly suggested that it was proper to look at the cost to the defendant to comply with injunctive relief for purposes of determining the amount in controversy, "all of these cases arose under the court's federal question jurisdiction and involved constitutional issues." *NOW,* 612 F.2d at 108. Thus, the appropriate rule in diversity jurisdiction cases involving claims for purely injunctive relief has never been addressed. Plaintiffs respectfully submit, that to the extent the Court feels it must address that issue, that the appropriate inquiry is the value to the Plaintiff, not the cost to the defendant. *See Smith v. GTE Corp.,* 236 F.3d 1292, 1309 (11th Cir. 2001) ("For amount in controversy purposes, 'the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.') (citations omitted); *Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2d Cir. 1972) ("the amount in controversy is calculated from the plaintiff's standpoint; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested"); *Moriconi v. AT&T Wireless PCS,* 280 F.Supp.2d 867, 879 (D. Ark. 2003) (costs incurred by defendant in complying with injunctive relief are irrelevant for amount in controversy purposes); *Massachusetts State Pharmaceutical Ass'n v. Federal Prescription Serv., Inc.,* , 431 F.2d 130, 132 (8th Cir. 1970) (amount in controversy is tested by the value of the suit's benefit to the plaintiff).

injunctive relief necessary to avoid consumer confusion would require TES to conduct business in the District of Columbia under a different name. *See* Notice, ¶ 16. And according to TES, such an effort would require TES to create a new corporation, acquire new software licenses, produce separate advertisements, produce separate course materials, develop a new trademark, establish new phone lines dedicated to answering phones from D.C. consumers, hire new employees, obtain additional insurance, obtain a new domain name, create a new website, and "other business requirements." *Id.* In his declaration, Vivek Israni says he "believe[s] these expenses would exceed $75,000." Israni Decl., ¶ 7. In its Notice, TES says without any qualifications, that "[t]hese expenses *would* exceed $75,000." Notice, ¶ 16 (emphasis added). These naked assertions do not constitute "competent proof" sufficient to support TES'S jurisdictional "allegations by a preponderance of evidence." *McNutt,* 298 U.S. at 189.

In fact, TES has not explained why any of these steps would be necessary in order to effectuate an injunction that merely requires it to stop deceiving District residents. The Court may find that the appropriate injunctive relief consists of any combination of the following items, which would likely cost far less than $75,000: (1) a disclaimer on the TES website; (2) a link on the TES website to TestMasters' website; (3) an instruction to TES's telemarketing representatives and instructors not to make misleading statements or omissions; (4) a change of TES's trade name in the District; or (5) corrective advertising. None of these measures would require the formation of a separate company, additional software licenses, additional employees, additional insurance, new course material or any of the other items that Israni speculates his company might need to pay for if an injunction is issued in this case. Israni's unfounded speculation about costs that are unlikely to ever be incurred by TES is quite simply not an

adequate basis for valuing the cost to TES of complying with an injunction prohibiting it from misleading District consumers.

**C.    Prospective Attorneys' Fees Do Not Constitute Any Part Of The Jurisdictional "Matter in Controversy" Under 28 U.S.C. § 1332**

TES's attempt to reach the jurisdictional minimum through speculation concerning the amount of attorneys' fees Plaintiffs will need to expend to vindicate their substantive rights under the D.C. Consumer Protection Act must be rejected.  First, this Court has found "that attorney fees are generally an improper vehicle for obtaining federal diversity jurisdiction." *Srour v. Barnes*, 670 F. Supp. 18, 22 (D.D.C. 1987).  A "narrow interpretation" of the statutory term "matter in controversy" is "essential to carrying out the constitutional imperative of limiting the jurisdiction of Article III courts." *Id.*  Because the "recovery of attorney fees will nearly always be collateral to a substantive matter in controversy," as it is in this case alleging that defendant misled consumers regarding defendant's identity, "jurisdictional principles militate against allowing attorney fees to satisfy section 1332's amount in controversy." *Id.*  Moreover, as this Court held in *Srour*, "as a policy matter, allowing attorney fees to constitute the matter in controversy would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the substantive issues before the court." *Id.*; *see also NOW*, 612 F. Supp. at 108-09 (finding that "amount of requested attorneys' fees cannot be aggregated for determining the jurisdictional amount").

Second, even if attorney's fees could properly be considered in determining whether the jurisdictional threshold has been met, TES's unsupported allegation that "it is apparent that the attorneys' fees required to litigate this case to trial will exceed $225,000" is speculative and woefully inadequate to meet defendant's heavy burden to prove that the amount in controversy is over $75,000. *See Johnson-Brown*, 257 F. Supp.2d at 177 (removing party "bears the burden of

12

proving the propriety of removal," and "the court must resolve any ambiguities concerning the propriety of removal in favor of remand"); *Rosenboro v. Kim*, 994 F.2d 13, 18-19 (D.C. Cir. 1993) ("diversity suits backed only by purely speculative or unsupported allegations of injury" should be "ousted from federal court"). Only the plaintiffs', not the defendant's, attorneys' fees could even conceivably be relevant in determining the amount in controversy, and plaintiffs have not alleged a specific amount of attorney's fees that they seek to recover (nor could they at this early stage of the litigation). Defendant's failure to even attempt to make a realistic estimate of plaintiff's potential reasonable fees in this case underscores the speculative nature of this asserted basis for diversity jurisdiction.[4]

**D.      Because Its Petition For Removal Was Plainly Without Merit, TES Must Pay The Costs And Expenses Plaintiffs Incurred In Moving To Remand This Case**

Under 28 U.S.C. § 1447(c), the Court may, in its discretion, "require payment of just costs and actual expenses, including attorneys fees, incurred as a result of the removal." *Id.* "Courts uniformly have held that a relevant factor for imposing costs and expenses is whether the removing party contradicts well-settled law in attempting to remove the case to federal court. Indeed, if non-removability is obvious or contrary to well-settled law, courts regularly impose costs and expenses incurred as a result of the removal." *Johnson-Brown*, 257 F.Supp.2d at 181.

---

[4] While this Circuit has not, to Plaintiffs' knowledge, adopted any exceptions to the general rule that attorney's fees should not be counted toward the jurisdiction amount in controversy, the First Circuit has stated that where attorney's fees are provided for by statute or contract, they can in certain circumstances be included. *See Dep't of Recreation and Sports of Puerto Rico, et al. v. World Boxing Ass'n, et al.*, 942 F.2d 84, 89 (1st Cir. 1991). However, the First Circuit has rejected inclusion of fees in the amount in controversy, even where provided for by statute, where the party seeking federal jurisdiction fails to provide any "factual basis" for an estimate of attorney's fees, as TES has failed to do here. *See id.* at 90. Thus, even if this Court were to recognize for the first time such an exception in this case, TES has failed to provide any factual predicate which would permit the Court to conclude that the $75,000 jurisdictional threshold has been met.

"Because [TES'] removal petition is supported by no legal authority and therefore lacks merit," Plaintiffs urge the Court order TES to pay the Plaintiffs' costs and actual expenses incurred as a result of the removal. *Id.*

## III.
## CONCLUSION

For all of these reasons, the Court should grant Plaintiffs' motion, and should enter an order remanding this case to the D.C. Superior Court.

Dated:  September 3, 2004                    Respectfully submitted,

                                             _____
                                             Hassan A. Zavareei
                                             D.C. Bar No. 456161
                                             TYCKO, ZAVAREEI & SPIVA LLP
                                             2000 L Street, N.W., Suite 808
                                             Washington, D.C. 20036
                                             (202) 973-0900

                                             *Attorneys For Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JARROD BECK, KEERTHI REDDY,
and ERIN GALLOWAY,

           Plaintiffs,

      v.

TEST MASTERS EDUCATIONAL
SERVICES, INC.,

           Defendants.

Civil Action No. 1:04-CV-01391

JR

## ORDER

Upon consideration of Plaintiffs' Motion For Order Remanding Case To The District Of Columbia Superior Court, and the memoranda of points and authorities filed in support of and opposition thereto, and for good cause shown, it is hereby ORDERED that said motion be and same hereby is GRANTED, and that this case is hereby REMANDED to the District Of Columbia Superior Court. In addition, the court ORDERS the Defendant to pay plaintiffs' costs and expenses incurred as a result of defendant's attempt to remove the case to this court.

Dated:

                                      _____
                                      Hon. James Robertson
                                      United States District Judge