**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JARROD BECK, *et al.*,           :
                                :
        Plaintiffs,      :
                                :
    v.                   : Civil Action No. 04-1391 (JR)
                                :
TEST MASTERS EDUCATIONAL     :
SERVICES, INC.,            :
                                :
        Defendant.       :

**MEMORANDUM**

This completely unmeritorious case is a spinoff from protracted litigation conducted elsewhere between Robin Singh Educational Service, Inc. and Test Masters Educational Services, Inc.  It began as a dispute over the right to an Internet domain name, testmasters.com, and then metastasized.  The first case ended in the Fifth Circuit, with an order invalidating Singh's claims to "Test Masters" as a trademark and allowing Test Masters to retain the domain name.  Refusing to accept that outcome, Singh continued the struggle to the point where a district judge in Texas enjoined him from pursuing registration of the mark, interfering with Test Masters' registration of the mark, and harassing Test Masters and its employees.  At least two other cases were then filed, this being one of them.  This suit has nominally individual plaintiffs, but they might as well be straw parties: the defendant asserts that the litigation is sponsored and controlled by Singh – in effect, that this is a proxy war –

and the assertion is nowhere denied.  The suit was first filed in Superior Court for the District of Columbia in 2004, removed to this court by Test Masters, transferred to the Southern District of Texas by order of the Multidistrict Litigation Panel in 2005, and then returned to this district by order of the MDL judge in Texas in 2009 – accompanied by a fully briefed motion for summary judgment that has never been spread on the public record of this court because everything was filed under seal in Texas.

The sponsored plaintiffs - Beck, Galloway, and Reddy – claim that the conduct of Test Masters' includes acts of fraud and negligent misrepresentation, and that it violated the D.C. Consumer Protection Procedures Act ("CPPA").

In 2003, each plaintiff was attending college or working in the D.C. metropolitan area, and each plaintiff was planning to attend law school the following year.  To improve his or her score on the LSAT - the standardized test that most law schools consider heavily in making admissions decisions - each plaintiff planned to take a preparation course.  All three plaintiffs say that they had decided to take Singh's course, basing their decisions upon the company's national reputation and upon glowing reviews of the course from friends and acquaintances.  All allege that they were duped into taking the "wrong" course – the Test Masters course – by the  omissions and misrepresentations of Test Masters.  They allege that Test

Masters had a duty to correct their mistaken beliefs that they were registering for and attending Singh's course but failed to do so; that the Test Masters website falsely stated that it had been offering LSAT courses since 1991; and that Test Masters falsely promised an LSAT course in College Park, Maryland, in August 2003.

Test Masters moves for summary judgment on the grounds <u>inter alia</u> that plaintiffs have not established and cannot establish damages or causation, and that in any case their claims for damages are merely speculative.  Plaintiffs resist summary judgment, citing Fed. R. Civ. P. 56(f) and demanding wide-ranging discovery.  Broad discovery was permitted in the earlier cases, but plaintiffs insist that they need responses to further discovery requests made in this one, requests designed to establish that Test Masters' intent was to deceive, that the Test Masters product was inferior, and that Singh's company was better regarded than Test Masters.

Whatever the facts that bear upon those contested issues, none of them is material to the causation and damages issues that are dispositive here.  No further discovery has been sought on causation and damages, which are of course for plaintiffs to prove with facts within their own provenance. Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to damages and has presented only the

most speculative concept of causation.  Test Masters is
accordingly entitled to summary judgment.[1]

Plaintiffs allege that they were misled into paying for
Test Masters' "inferior product," but an action for fraud,
fraudulent misrepresentation and violation of consumer protection
statutes is not a comparative hearing on the quality of competing
products.  The question is, how were the plaintiffs <u>injured</u> by
the conduct of Test Masters.  The answer to that question – at
least the answer established by the undisputed facts of record –
is that they weren't.  Two of the plaintiffs - Beck and
Galloway - improved their LSAT scores after taking the course.
Both scored in the 84th percentile or higher.  Both were admitted
to law schools.  Neither took the Singh course, so neither can
show that he or she would have done better with the Singh course.
Plaintiff Reddy did take the Singh course, but she scored only
one point higher on the LSAT after doing so, a *de minimis*
difference that may reflect only the experience of having taken
the test once before, and in any event she elected not to apply
for or attend law school at all.

---

[1] After Test Masters filed this dispositive motion,
plaintiffs moved for Rule 37 sanctions, alleging that within, or
behind, Test Masters' refusal to respond to its discovery demands
lurked spoliation, obstruction, and discovery misconduct [Dkt.
#34].  It was unnecessary to decide that motion while the motion
for summary judgment was pending, and it will now be denied as
moot.

The rest of plaintiffs' implied theory of damages is a series of "ifs" that gives new meaning to the word "speculation": If the plaintiffs had taken the course they thought they had purchased, they would have achieved higher LSAT scores.  If they had higher LSAT scores, they would have been admitted into better law schools.[2]  If they had attended better law schools, they would have secured better paying, more prestigious jobs.[3]  No citation is required to support the necessary conclusion that plaintiffs have advanced no competent evidence to establish that they have been injured by the conduct of which they complain, or, if their careers have been less satisfying than they hoped, that causation can be found in the actions or omissions of Test Masters.

The total absence of proof of damages or causation is enough to dispose of plaintiffs' common law claims of fraud and negligent misrepresentation, but another step is required when considering plaintiffs' CPPA claim.  That is because, in a recent decision that manages to evade its own precedent, the D.C. Court of Appeals has held that a CPPA claim brought on behalf of the

---

[2] Never mind that plaintiff Galloway was admitted to Notre Dame Law School, where she applied "early decision" because she had determined it was "the place for [her]." [Def. Mot. for SJ, 7]

[3] Try that one on the top-tier law school graduates who now seem to be the hardest hit by the current law firm recession. See http://www.nytimes.com/2010/01/17/fashion/17lawyer.html?scp=1&sq=law%20firm%20associates&st=cse

general public will lie, regardless of whether the plaintiff

experienced injury-in-fact.  Grayson v. AT&T, 980 A.2d 1137, 1154

n. 78 (D.C. 2009).  The Court of Appeals' workaround deals with

the law of standing, acknowledging that it has historically hewn

to the "case or controversy" line and that it has declined to

find standing without injury in cases like Friends of Tilden

Park, Inc. v. District of Columbia, 803 A.2d 1201 (D.C. 2002),

but latching onto its 1991 observation in Atchison v. District of

Columbia, 585 A.2d 150, 153, that "this court . . . enjoys

flexibility in regard to [the case or controversy requirement]

not possessed by the federal courts."  There is no CPPA claim in

this case that purports to be brought on behalf of the general

public, so plaintiffs' CPPA claims probably would not survive

even "flexible" review in the District of Columbia courts after

the Court of Appeals' startling decision in Grayson.  In this

federal court, however, which is an Article III court and which

lacks jurisdiction of claims that do not present a case or

controversy, Lujan v. Defenders of Wildlife, 504 U.S. 555, 559

(1992), plaintiffs' CPPA claim is fatally deficient and must be

dismissed.  See Hoyte  v. Yum! Brands, Inc., 489 F. Supp. 2d 24

(D.D.C. 2007) (actual or threatened injury required to bring a

DCCPPA claim) (citing <u>Williams v. Purdue Pharma. Co.</u>, 297 F.

Supp. 2d 171, 178 (D.D.C. 2003)).

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge