**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JARROD BECK, KEERTHI REDDY, and ERIN GALLOWAY,**<br><br>    **Plaintiffs,**<br><br>        v.<br><br>**TEST MASTERS EDUCATIONAL SERVICES, INC.,**<br><br>    **Defendant.** | **Civil Action No.  04-1391 (JDB)** |

## MEMORANDUM OPINION & ORDER

Once again, the Court must consider a dispute stemming from the contentious discovery process in this D.C. Consumer Protection Procedures Act ("CPPA") case. In resolving plaintiffs' prior motion, the Court found that defendant Test Masters Educational Services, Inc. ("TES") spoliated emails. The Court imposed sanctions on TES, adopting an adverse inference instruction and ordering TES to pay plaintiffs' expenses for two discovery-related motions. TES has filed a motion for reconsideration of the Court's Order and has lodged objections to plaintiffs' requested expenses, including attorney fees. For the reasons set forth below, the Court agrees that two modifications to the prior Order are warranted. The Court will also award the expenses plaintiffs seek, with the modest reductions detailed below.

## BACKGROUND

Plaintiffs Jarrod Beck, Erin Galloway, and Keerthi Reddy allege that TES violated the CPPA by misleading them into taking its LSAT preparation course when plaintiffs actually intended to enroll in the Robin Singh Educational Services' "TestMasters" LSAT preparation course. In 2011, plaintiffs filed a motion to compel limited discovery related to this claim. See

Pls.' Mot. to Compel Disc. or, in the Alternative, for Sanctions [Docket Entry 81] (May 13, 2011) ("First Motion"). The Court granted plaintiffs' motion, permitting discovery of certain categories of material. <u>See</u> Order [Docket Entry 93] at 5-6 (June 27, 2011).

TES failed to produce some emails and recordings of phone calls, and it redacted consumers' email addresses on other documents described in the Court's June 27, 2011, Order; plaintiffs then filed a motion for sanctions based on the nonproductions (as well as to compel production of unredacted documents). <u>See</u> Pls.' Mot. to Compel & for Sanctions [Docket Entry 103] (Dec. 9, 2011) ("Second Motion"). TES argued that the emails were not produced because they were accidentally lost or destroyed. The Court disagreed, finding the nonproduction culpable, and concluding that an issue-based sanction was warranted. <u>See</u> Memorandum Opinion [Docket Entry 122] at 14-15 (Sept. 25, 2012). The Court found an adverse inference instruction to be an appropriate sanction under its inherent authority. The Court further ordered that TES pay plaintiffs' expenses, including attorney fees, for their work on the First Motion and for one-third of their work on the Second Motion. The Court also compelled production of documents with unredacted email addresses, but held that TES's opposition to that motion had been substantially justified and denied plaintiffs' motion for sanctions as to nonproduction of telephone recordings. Consequently, the Court declined to award plaintiffs expenses for their work on those two issues.

Soon after, TES filed the instant motion to vacate the Court's September 25, 2012, Order, arguing for reconsideration on an array of grounds. Plaintiffs oppose TES's motion. Further, as directed by the Court, plaintiffs have submitted a list of their expenses for the two motions with the expenses for each motion delineated separately. TES raises a number of objections to the award sought.

**<u>STANDARD OR REVIEW</u>**

"A district court always has the power to modify earlier orders in a pending case." United States v. Rezaq, 899 F. Supp. 697, 701 (D.D.C. 1995) (alteration and internal quotation marks omitted); see also United States v. Long, No. 10-171, 2012 WL 848161 (D.D.C. Mar. 13, 2012). Although the Court is reluctant to revisit prior decisions, it will do so where error is apparent. See Warren v. Am. Bankers Ins., 507 F.3d 1239, 1243 (10th Cir. 2007).

## ANALYSIS

### I.   Reconsideration of the Court's September 25, 2012, Order Imposing Sanctions

TES raises a slew of challenges to the Court's sanctions decision. Most have no merit, and warrant only brief discussion. Two of TES's arguments, however, do raise substantial issues: first, that the mandatory presumption in the jury instruction the Court adopted is too harsh; second, that the award of plaintiffs' expenses for the two discovery motions was improper under Rule 37(a). The Court concludes that the adverse inference instruction should be modified. The Court also agrees that Rule 37(a) does not support an award of expenses for plaintiffs' Second Motion, but finds that the award is nonetheless justified under Rule 37(b).

#### A.  TES's Objections to the Spoliation Finding

Before addressing these two points, the Court will dispose of TES's other objections. TES challenges the Court's finding that spoliation occurred, arguing that the Court "strayed from controlling law on the level of culpability required to prove spoliation of evidence" because a finding of bad faith is required to support an adverse inference instruction. See TES's Mot. to Vacate [Docket Entry 124] at 2 (Oct. 17, 2012). TES also suggests that the requisite culpability must be found by clear and convincing evidence. Id. at 3. D.C. Circuit law is, however, to the contrary. The D.C. Circuit has established that, although inherently punitive sanctions like entry of a default judgment require clear and convincing evidence of culpability, "a district court may

3

impose issue-related sanctions [like an adverse evidentiary determination] whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1478 (D.C. Cir. 1995). As for the requisite culpability, the D.C. Circuit has held that non-accidental destruction supports a negative evidentiary inference. See Talavera v. Shah, 638 F.3d 303, 312 (D.C. Cir. 2011). These principles amply support the result here. Although the Court declined to find intentional, malicious destruction on the available record (an inference that was not entirely unsupported, see Memorandum Opinion at 12 n.3), the Court's prior opinion makes clear that TES's conduct was not accidental. After a computer crash wiped out emails TES had a clear duty to preserve, TES failed to make any serious effort to recover the data. This lackadaisical response "constitutes a conscious disregard of TES's preservation obligations," Memorandum Opinion at 12, and constitutes culpable conduct supporting a negative inference. See Talavera, 638 F.3d at 312.

Next, TES argues that the Court improperly "shifted th[e] burden to TES by holding that TES'[s] 'defense' was not sufficiently plausible." TES's Mot. to Vacate at 6. The Court did no such thing. The evidence in the record, consisting of the deposition of TES's president Roger Israni combined with an inconsistent declaration by Israni filed several years later—when each is afforded appropriate weight, which means no weight for the declaration given its untimely submission and lack of credibility—establishes TES's culpability by a preponderance of the evidence. It is beyond dispute that the Court can decline to give weight to evidence it finds incredible or untimely. Nor does an adverse evidentiary inference deprive defendant of due process. To the contrary, making judgments about the evidence, imposing adverse evidentiary determinations—and, indeed, in appropriate circumstances entering a default judgment—are all part of the Court's inherent authority. See Shepherd, 62 F.3d at 1472 ("As old as the judiciary

itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."). The Court has afforded TES ample process. After considering TES's arguments, both in written motions and at a motions hearing, the Court found these arguments lacking and imposed a sanction.

Without citing any authority, TES now argues that a showing of prejudice is "a critical element for a finding of spoliation." TES's Mot. to Vacate at 9. But when (as is the case here) a party had a duty to preserve evidence, that evidence was destroyed, and the destruction was accompanied by a sufficiently culpable state of mind, an adverse inference is warranted if

> the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

Bolger v. District of Columbia, 608 F. Supp. 2d 10, 30 (D.D.C. 2009) (internal quotation marks omitted); see also Talavera, 638 F.3d at 312 (asking whether "destroyed records were relevant to [plaintiff's] challenge"). As this Court already found, the emails were likely to be relevant because communications between TES and its customers might well reflect other customers' confusion about the identity of the course, and reveal TES's misrepresentations or material omissions in response to that confusion. Emails with disgruntled customers (which plaintiffs have shown were likely to exist) could undermine TES's claim that it never fostered confusion about its relationship to Robin Singh's course and might well buttress plaintiffs' argument that TES's conduct led to their mistaken enrollment or that TES's conduct was accompanied by malice warranting punitive damages. Compare Talavera, 638 F.3d at 312 ("the notes might have undermined [selecting official's] claim that the man he selected exhibited more knowledge of the

job than [plaintiff] did and might also have confirmed [plaintiff's] assertion that [selecting official] asked her different questions than he asked of the men he interviewed"). Plaintiffs' burden to show relevance is a limited one, for it is TES's misconduct that destroyed the documents depriving plaintiffs of the best proof of their contents. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002) ("Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." (alterations and internal quotation marks omitted)). Plaintiffs have more than met their burden.

**B.  Nature of Adverse Inference Instruction**

Turning, then, to TES's weightiest arguments, TES first objects to the nature of the adverse inference instruction the Court adopted. The prior opinion stated that, at trial, the Court "will give an adverse inference instruction stating that TES failed to produce certain emails within its control, and that the factfinder therefore must presume that the evidence contained in those emails would have been favorable to plaintiffs." Memorandum Opinion at 26. TES now contends that the mandatory nature of the instruction is improper. TES did not make this argument in opposing plaintiffs' motion for sanctions. Nonetheless, the Court agrees with TES and finds that modification of the prior opinion is appropriate in this respect.

An adverse evidentiary inference is "remedial rather than punitive," Shepherd, 62 F.3d at 1478, so the Court must assess what instruction will suffice to remedy the harm plaintiffs suffered. In these circumstances, a permissive instruction, which allows rather than directs a factfinder to presume that the evidence contained in the emails was favorable to plaintiffs, sufficiently redresses the harm from the spoliation while allowing the factfinder to draw an

inference based on its own assessment of TES's wrongdoing. A permissive instruction is especially appropriate because the Court does not find intentional misconduct, but only gross negligence or recklessness on the part of TES. See Arch Ins. Co. v. Broan-Nutone, LLC, No. 11-6221, 2012 WL 6634323, at *4 (6th Cir. Dec. 21, 2012) ("A permissive instruction is particularly appropriate if the evidence was not intentionally destroyed.").

Case law overwhelmingly favors using a permissive rather than mandatory instruction— at least, as here, absent special circumstances counseling for a stronger inference. The D.C. Circuit has held a permissive instruction appropriate for non-accidental destruction. See Talavera, 638 F.3d at 312 (explaining what "reasonable jury could conclude" given spoliation). Other judges on this Court have done the same. See Zhi Chen v. District of Columbia, 839 F. Supp. 2d 7, 16 (D.D.C. 2011) (proposing jury instruction that "you are permitted, but not required, to infer that the evidence would have been unfavorable to the defendant" upon finding defendant grossly negligent in failing to preserve evidence). Moreover, federal courts of appeals uniformly favor a permissive rather than mandatory instruction. See, e.g., Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998) ("We have held with some regularity that a trier of fact may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party."); Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) ("we also believe . . . that a jury should be permitted (but not required) to draw an adverse inference against Gottlieb based on the destruction of [these] documents" ); Beaven v. DOJ, 622 F.3d 540, 555 (6th Cir. 2010) ("an adverse inference is usually only permissive for the factfinder, not mandatory"); see also 2 John Henry Wigmore, Evidence in Trials at Common Law § 291, at 227 (Chadbourn rev. 1979) ("All that is asked is that the jury be allowed to make the inference if they are in truth convinced to that effect.").

Plaintiffs have pointed to nothing about the circumstances of this case that would justify a mandatory, rather than permissive instruction given this baseline, nor have they explained why a permissive inference will fail to remedy the harm they suffered. See Arch Ins. Co., 2012 WL 6634323, at *5 (explaining that permissive instruction compensates non-spoliating party because "the instruction [comes] dressed in the authority of the court, giving it more weight than if merely argued by counsel"). Accordingly, the Court determines that the appropriate issue-related sanction is to instruct the factfinder that it may (but need not) infer from TES's failure to produce certain emails that the emails would have contained evidence unfavorable to TES.

### C.  Propriety of Awarding Expenses to Plaintiffs

The Court also finds some merit in another of TES's arguments for reconsideration. In awarding attorney fees associated with plaintiffs' motion to compel (First Motion) and plaintiffs' motion for sanctions (Second Motion), the Court relied on Rule 37(a). See Memorandum Opinion at 24. TES now argues that Rule 37(a) cannot support the award, and the Court agrees as to the Second Motion. Rule 37(a) governs "motion[s] for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a) (capitalization omitted). Pursuant to Rule 37(a)'s expenses provision, "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—" the court "must," in certain circumstances, award the "movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).[1]

The First Motion was indisputably a motion to compel under Rule 37(a)—it was a "motion to compel discovery, or, in the alternative, for issue-precluding sanctions." Order [Docket Entry 93] at 3 (June 27, 2011); see also First Motion [Docket Entry 81] at 1. The Court

---

[1] More precisely, Rule 37(a) directs that a court "must" order payment of fees to the movant, but not if it finds that the movant filed the motion prematurely, if the opposing party's conduct was "substantially justified" or the award is "unjust" for other reasons. Fed. R. Civ. P. 37(a)(5)(A).

granted the motion in full, allowing the discovery sought without reaching the alternative sanctions argument. Because the Court granted a Rule 37(a) motion, the Rule 37(a)(5)(A) provision directs the Court to award plaintiffs their reasonable expenses as long as TES's opposition was not substantially justified and no other circumstances make the award unjust. As the Court previously explained, TES's opposition to the motion was not substantially justified. Moreover, no circumstances make the award unjust. On the contrary, holding TES liable for plaintiffs' expenses is entirely appropriate given the circumstances of this case—by declining to produce the documents voluntarily, TES forced plaintiffs to spend time briefing the motion to compel and obtaining a court order directing the production. TES properly bears the costs incurred in that process.

The propriety of expenses for the Second Motion is more complicated. Entitled "Plaintiffs' Motion to Compel, for Issue-Related Sanctions, and for Monetary Sanctions," the Second Motion was, in relevant part, a motion for sanctions. See Second Motion [Docket Entry 103] at 1.[2] A motion for sanctions is not a "motion for an order compelling disclosure or discovery," Fed. R. Civ. P. 37(a) (capitalization omitted), and so is not a Rule 37(a) motion. Indeed, in the Second Motion plaintiffs sought expenses under Rule 37(b) and did not purport to seek them under Rule 37(a). Plaintiffs have been unable to point to any cases where a party received expenses under Rule 37(a) for a motion seeking sanctions, and D.C. Circuit precedent makes the existence of such cases unlikely. See Westmoreland v. CBS, Inc., 770 F.2d 1168, 1173 (D.C. Cir. 1985) ("Rule 37(a)[(5)(A)] is not a general attorneys' fee award[] for violations of the Federal Rules of Civil Procedure. It provides a reimbursement of expenses incurred

---

[2] The "motion to compel" portion of the Second Motion was plaintiffs' request that the Court order TES to produce certain documents without redacting email addresses. Although the Court granted the motion to compel, it found TES's opposition "substantially justified" and hence denied fees for that portion of the Second Motion. See Memorandum Opinion at 25-26.

specifically in compelling discovery under Rule 37(a)." (internal quotation marks omitted)). The Court hence cannot award fees under Rule 37(a)(5)(A) for the Second Motion.

That, however, does not end the inquiry. Rule 37(b) carries its own expenses provision, providing that where a party "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).[3] An award of expenses, including attorney fees, is consequently appropriate if the motion for sanctions was a proper Rule 37(b) motion. The Court did not resolve this question in the prior opinion, awarding fees under its inherent power. But because the showing required for attorney fees under the inherent power is higher than under Rule 37(b), the Court will now address whether TES's behavior constitutes "fail[ure] to obey an order to provide or permit discovery," within the meaning of Rule 37(b).

As the Court noted previously, the relevant law is somewhat complicated. The Court is persuaded, however, that TES's behavior falls within Rule 37(b) and that expenses for one-third of the Second Motion are hence appropriate under Rule 37(b)(2)(C). Here, the Court ordered discovery in response to plaintiffs' motion to compel, "find[ing] that some narrowly-tailored discovery with respect to plaintiffs' remaining D.C. CPPA claim is warranted," and specifically allowing discovery of "[d]ocuments reflecting communications with or identifying LSAT consumers (or prospective LSAT consumers) in the District of Columbia metropolitan area from 2003 through 2010, including . . . e-mails." See Order [Docket Entry 93] at 5-6 (June 27, 2011). The Court's June 27, 2011, Order resolved plaintiffs' motion to compel discovery by specifically

---

[3] When initially seeking expenses for the Second Motion, plaintiffs properly relied on Rule 37(b)(2)(C) to support their request.

identifying the appropriate subjects on which TES was required to provide responsive materials. Despite this Order and plaintiffs' request for these documents, TES failed to produce any emails predating August 2007. TES's conduct consequently falls within the plain language of Rule 37(b): it failed to obey the Court's Order to permit discovery of these emails.

TES argues, however, that this failure to comply falls outside Rule 37(b) because "all of the alleged spoliation conduct occurred <u>before</u> this Court's June 27, 2011 order" and because "none of the information Plaintiffs claim has been spoliated was subject to any discovery order at the time it was allegedly spoliated." TES's Opp'n to Second Mot. [Docket Entry 109] at 10 (Jan. 6, 2012). The fact that the documents were already spoliated at the time the June 27, 2011, Order was issued, however, is of no moment. The bottom line is that TES failed to obey the Court's Order. To be sure, in some circumstances, an inability to comply with the Order will constitute "substantial[] justifi[cation]," Fed. R. Civ. P. 37(b)(2)(C), that precludes an award of fees. But this is not such a case. As the Court found, TES's failure to recover the emails was culpable. And the Court does not find culpable conduct to be substantial justification, even though it occurred before the Order was issued. In reaching this conclusion, the Court is persuaded by courts in other districts that have found Rule 37(b) applicable in these circumstances. <u>See, e.g.</u>, <u>Orbit One Comm'ns, Inc. v. Numerex Corp.</u>, 271 F.R.D. 429, 435 (S.D.N.Y. 2010) ("Sanctions [under Rule 37(b)] are appropriate even where a party's spoliation occurred before the issuance of the discovery order—thus rendering compliance impossible—because the inability to comply with the order was 'self-inflicted.'").

Moreover, although the Ninth Circuit expressed hesitation in applying Rule 37(b) to spoliation in <u>Unigard</u>, that case is distinguishable because no order permitting discovery had ever been issued, so the party's spoliation "d[id] not fall within the literal language of Rule 37."

Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 367 (9th Cir. 1992). The Ninth Circuit noted that "Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse." Id. at 368. In this case, by contrast, there was a court order that TES disobeyed, so the language of Rule 37(b) is satisfied. Finally, the Rule 37(e) safety valve does not apply to exempt TES's conduct from Rule 37(b): the failure to recover the emails after the crash was grossly negligent or reckless and hence not "a result of the routine, good-faith operation of an electronic information system," Fed. R. Civ. P. 37(e).[4] And, as the Court found earlier, awarding expenses for the sanctions component of the motion is fair in these circumstances. Consequently, TES shall pay plaintiffs' expenses, including attorney fees, for one-third of the Second Motion under Rule 37(b)(2)(C).[5]

## II.   Size of Expenses Award

A district court has broad discretion in determining the size of an expenses award under Rule 37. See Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 68 (D.D.C. 2008); see also Weisberg v. Webster, 749 F.2d 864, 873 (D.C. Cir. 1984). To determine the proper size of the award, the Court uses the lodestar method, multiplying a reasonable hourly rate by the reasonable number of hours expended. See Tequila Centinela, 248 F.R.D. at 68. The moving party bears the burden to prove that the request is reasonable, and the Court has discretion to adjust the fee award in light of the opposing party's objections. Id.

Consistent with the Court's September 25, 2012, Order directing TES to pay plaintiffs' reasonable expenses for the First Motion and one-third of the reasonable expenses for the Second Motion, plaintiffs have submitted documentation supporting their fee request. Plaintiffs request

---

[4] Moreover, the crash itself was not "routine" under Rule 37(e).
[5] Based on this analysis, the Court also concludes that the underlying spoliation finding and imposition of an adverse inference instruction is proper under Rule 37(b) as well as under the Court's inherent authority.

$46,083.49 in fees and expenses related to the First Motion. They also seek $21,790.66 in fees and expenses for the Second Motion, which consists of one third of the attorney fees and general expenses related to the Second Motion as well as the full $1,787.50 expended for an expert witness whose declaration related solely to TES's lost emails. Aside from a few reductions delineated below, this Court finds plaintiffs' request reasonable and well supported and will grant it in substantial part.

### A.  Reasonable Rates

TES challenges the reasonableness of plaintiffs' requested rates. Reasonable rates are those "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (internal quotation marks omitted). "[R]ates charged in private representations may afford relevant comparisons." Id. (internal quotation marks omitted). "In order to demonstrate [prevailing market rates] plaintiffs may point to such evidence as an updated version of the Laffey matrix"—a schedule of charges based on an attorney's experience developed in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983)—"or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." Covington, 57 F.3d at 1109.

Plaintiffs seek reimbursement at their actual billing rates as of 2010: $400/hour for a partner with 16 years' experience; $300/hour for an associate with 7 years' experience; $250 an hour for an associate with 5 years' experience; $250/hour for a contract attorney with 8 years' experience; and $60/hour for three paralegals. See Zavareei Supp. Decl. [Docket Entry 127-1] ¶¶ 3-9 (Nov. 5, 2012); Ex. C to Zavareei Decl. [Docket Entry 123-4] (Oct. 5, 2012). With one exception, these rates are less, and in most cases considerably so, than the Laffey rates for 2011-

2012—the years in which plaintiffs' work on the two motions was performed—based on the U.S. Attorney's Office version of the updated <u>Laffey</u> matrix. <u>See</u> Laffey Matrix—2003-2012, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf (last visited Feb. 28, 2013).[6]

The only rate requested that exceeds the matrix rate is the $300/hour sought for Andrea Gold, an attorney with 7 years' experience, which is $15 higher than the U.S. Attorney's Office <u>Laffey</u> rate. Although the Court is cognizant that the matrix is "somewhat crude" precisely because, among other things, it "lumps attorneys with four to seven years of experience in the same category," <u>Covington</u>, 57 F.3d at 1109, the Court finds reduction to the matrix rate appropriate. The Court will deduct $15/hour for the 1.7 hours plaintiffs seek for Ms. Gold's work on the First Motion and the 30.5 hours plaintiffs seek for her work on the Second Motion. Otherwise, the rates requested fall below the prevailing market rates and are well within the range of reasonableness accepted by the D.C. Circuit.

### B. Reasonable Hours

In support of the number of hours for which they seek compensation, plaintiffs provide a sworn declaration by a partner with attached hour logs reflecting the hours expended on each motion. <u>See</u> Zavareei Decl. ¶¶ 1-5 [Docket Entry 123-1]; Ex. A to Zavareei Decl. [Docket Entry 123-2]; Ex. B to Zavareei Decl. [Docket Entry 123-3]. The hour logs are based on

---

[6] The following table reflects the rate plaintiffs request and the <u>Laffey</u> rate pursuant to the U.S. Attorney's Office matrix:

| Attorney or Paralegal Name & Attorney Experience | <u>Laffey</u> Rate | Hourly Rate Requested |
|---|---|---|
| Zavareei (16 years) | $435 | $400 |
| Monjay (8 years) | $350 | $250 |
| Gold (7 years) | $285 | $300 |
| Williamson (5 years) | $285 | $250 |
| Prom | $140 | $60 |
| Ressue | $140 | $60 |
| Goschalk | $140 | $60 |

contemporaneously recorded time entries for the attorneys and paralegals involved, edited to reflect only the activities for which plaintiffs seek compensation. See Zavareei Supp. Decl. ¶ 12. The declaration also describes plaintiffs' expenses, and the attached logs list the expenses with a description and, for most items, the date they were incurred. See Zavareei Decl. ¶¶ 9-10; Ex. A to Zavareei Decl. at 7; Ex. B to Zavareei Decl. at 7-8.

TES mounts a multipronged attack on this evidence, objecting that it is "incompetent" and that plaintiffs have failed to provide "adequate testimony authenticating these documents" under the Federal Rules of Evidence. Def.'s Objections to Pls.' Expenses Req. [Docket Entry 125] at 3-4 (Oct. 17, 2012) ("Def.'s Objections"). TES also objects to plaintiffs' use of hour logs that are "excerpts" of the reports generated by the attorneys' billing software. Id. at 3. These objections are without merit. Consistent with the D.C. Circuit's requirements, plaintiffs have "maintain[ed] contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Weisberg, 749 F.2d at 873 (quotation omitted). And in submitting the log of the hours for which they request compensation, supported by a sworn declaration from the supervising attorney, plaintiffs have provided exactly the sort of evidence that courts normally consider in evaluating the reasonableness of a fee award. See, e.g., New Jersey v. EPA, 703 F.3d 110, 115 (D.C. Cir. 2012) (per curiam) (considering just these types of billing records); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (same); see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam) (encouraging fee-seeking parties to support their request with "detailed summaries based on contemporaneous time records" (emphasis added)). Plaintiffs offer a declaration that describes the process by which the records were produced: they were generated with the aid of their firm's time-keeping software and edited to omit hours unconnected to the

First and Second motions and those hours removed in the exercise of billing judgment. See Zavareei Supp. Decl. ¶¶ 11-13. That is precisely what the Court invited plaintiffs to provide. See Memorandum Opinion at 26 ("[P]laintiffs shall resubmit their request for payment with appropriately apportioned expenses."). The Court finds the records entirely sufficient "to permit the . . . Court to make an independent determination whether or not the hours claimed are justified." Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327.[7]

Next, TES objects to specific expenditures connected to the First Motion. To begin with, TES argues that the entry "[d]rafting letter to Jewell" is insufficient to demonstrate that the time expended was related to First Motion. The Court agrees. As other courts in this district have noted, "a near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded." Tequila Centinela, 248 F.R.D. at 69 (alteration and internal quotation marks omitted). The letter, which plaintiffs have attached, was filed shortly after plaintiffs filed the First Motion. It does touch on discovery disputes, but focuses on responding to TES's indication that it would file a sanctions motion and its criticism of plaintiffs' counsel. See Ex. 2 to Zavareei Supp. Decl. The Court cannot conclude that TES's failure to voluntarily provide discovery—rather than the statements TES made in its own letter to plaintiffs—was the primary cause of the letter; indeed, because the letter addressed primarily other aspects of the tense relationship between the attorneys, it appears likely that, at least in substantial part, it would have been written had TES allowed discovery as it should have. Although the Court appreciates the parties' efforts to resolve their disputes by conferring, see

---

[7] TES argues that because plaintiffs' attorneys deducted certain hours they did not submit to the Court, "this Court cannot review the precise amounts actually removed," and that the Court hence "should award no fees." Def.'s Reply in Supp. of Objections [Docket Entry 129] at 2-3 (Nov. 12, 2012). But the Court is concerned with the reasonableness of the hours claimed, not the hours excluded. To be sure, a specific figure for the hours omitted could bolster plaintiffs' case for reasonableness, but it is by no means necessary to the Court's evaluation. Moreover, even if plaintiffs' billing records were deficient—and they are not—TES is far afield in suggesting that this would warrant a flat-out denial of fees. See Brownlee, 353 F.3d at 971 (reducing fee award by 50% where time records "manifestly inadequate").

Local Rule 7(m), plaintiffs have not established that this particular activity arose out of the Rule 37 violations the Court sanctioned. Accordingly, the Court will deduct the 2.3 hours expended by a partner and paralegal related to the letter.

TES next argues—without citation—that fees and expenses related to courtesy copies should be excluded because the expense "is not necessary." Def.'s Objections at 10. The question for the Court, however, is not whether the expense was "necessary" but whether it was reasonable. The small amount of time expended by plaintiffs' attorneys to provide courtesy copies—helpful to the Court given the voluminous motions and exhibits in this case—was reasonable and is hence properly compensable.[8] Finally, TES objects to the 30 minutes plaintiffs' attorneys spent researching filing deadlines as unreasonable for the value of the research and because it would be necessary regardless of the motion to compel. The Court finds the time expended reasonable even for an attorney familiar with the rules of this court. Moreover, TES's approach—asking whether any bit of research can be used towards future arguments, and so would have had to be conducted regardless of the Rule 37 motion—requires an untenable parsing of the record. The research about deadlines stemmed directly from the need to file the motion. Had TES cooperated in discovery, the attorneys would not have expended this time. Whether this issue or any other would have arisen in the context of future motions and so created savings down the line is irrelevant.[9]

Turning to the Second Motion, TES makes two specific objections to the hours requested. TES first argues that all time incurred by plaintiffs in preparing a status report before a status

---

[8] TES does not argue that such tasks are noncompensable because they require no attorney or paralegal skill, and the Court will not consider that argument.

[9] TES's other arguments, such as that its opposition to the First Motion was substantially justified and that fees should be reduced because the Court did not reach plaintiffs' alternative argument for sanctions in that motion are without merit for the reasons stated in the Court's prior opinion. See Memorandum Opinion at 25; see also New Jersey v. EPA, 663 F.3d 1279, 1281 (D.C. Cir. 2011) (fact that certain arguments were not reached provides no basis for reducing the fee).

conference should be excluded because plaintiffs decided to incur the expense "unilaterally," Def.'s Objections at 12. The status report and the status conference flowed from TES's sanctioned conduct. The Court set the status in the June 27, 2011, Order granting the First Motion so as to obtain an update on TES's compliance with that Order. Plaintiff's status report raised the very instances of noncompliance that became the basis of the Second Motion and the Court's award of sanctions. The status report, hence, arose precisely out of the violations that led the Court to sanction TES, and TES's discovery violations were a "but for" cause of the status report. The report was helpful to the Court in narrowing the issues, and the time plaintiffs expended on it was reasonable, in fact likely streamlining the briefing required for the Second Motion itself.

TES also objects to certain billing entries totaling 10.9 hours, which, in its view, reflect activities that would be part of discovery regardless of the sanctioned conduct. This argument has more merit. Some of the entries, like "[r]evise and finalize discovery requests, emails regarding same," do indeed seem consistent with general discovery work that would be required even if TES properly cooperated. Others, like "[d]rafting letter to Jewell regarding discovery deficiencies," stem directly from TES's failure to fully comply with the Court's Order. Still others, like "[r]eviewing document production and drafting meet and confer letter," reflect a task—reviewing document production—that would have been necessary even absent violations, but that perhaps took longer given TES's noncompliance. See also Pls.' Status Report [Docket Entry 97] at 3 (Nov. 3, 2011) (listing the deficiencies described in the meet and confer letter, which also formed the basis for the Second Motion). The Court finds that plaintiffs have only established that TES's violations were a "but for" cause for 50% of the 10.9 hours sought. The Court will reduce the award accordingly.

TES also objects to a number of entries, which total $276.00, as "general administrative tasks" like discussing "next course of actions with case," identifying Israni's deposition exhibits, and editing and filing a motion for extension of time. Such activities are part of a law firm's overhead and lack the requisite close relationship to TES's violations. The Court hence finds these small expenses noncompensable, and will deduct them from the total award.

Finally, TES contends that the hours expended on the two motions are not reasonable and necessary in light of the value of plaintiff's claims. Although TES has an extreme valuation of plaintiffs' claims—contending that they are worth $0 despite the D.C. Circuit ruling allowing claims for statutory damages to proceed and despite TES's own willingness to expend significant resources in discovery to defend against them—TES also miscasts the relevant inquiry. The Court found that TES's conduct in discovery led to the filing of these two motions, which would otherwise have been unnecessary. Given TES's refusal (without substantial justification) to provide the discovery to which plaintiffs were entitled and its failure, due to spoliation, to provide discovery specifically permitted by the Court's Order, plaintiffs reasonably expended a number of hours obtaining relief to which they were entitled.

Still, the number of hours plaintiffs spent on each motion is very high. Plaintiffs' descriptions of how each block of time was spent are quite detailed and the Court notes the complex and fact-specific work these motions entailed.[10] But given the high total number of hours billed, the descriptions leave some remaining question about the reasonableness of the hours spent, and the Court finds a small across-the-board reduction appropriate to reflect this deficiency. Accordingly, the Court will reduce the hours requested by 10%. See Tequila

---

[10] Indeed, the time-consuming nature of such motions is a significant reason cost-shifting is appropriate when a party resists discovery without substantial justification. Discovery disputes are costly, and parties are encouraged strongly—both by the Court and by the Federal Rules of Civil Procedure—to cooperate in discovery rather than waging expensive battles tangential to the merits of the claims.

<u>Centinela</u>, 248 F.R.D. at 72 (applying 10% reduction to "compensate for any billing of redundant time" after making appropriate specific deductions).

### C.  Non-Attorney Fee Expenses

TES objects to plaintiffs' support for their non-attorney fee expenses because plaintiffs have provided no invoices supporting minor expenses like photocopies and postage. Plaintiffs specifically list each expense, e.g., "Long Distance [$]4.06," and provide the dates on which most expenses were incurred. <u>See</u> Ex. A to Zavareei Decl. at 7; Ex. B to Zavareei Decl. at 7-8. The expense logs are supported by the supervising attorney's sworn declaration that these charges are "a true and accurate reflection of out-of-pocket costs" that the law firm incurred. <u>See</u> Zavareei Decl. ¶ 9; <u>see also</u> <u>id.</u> ¶ 10. The log of expenses provides adequate detail for TES to challenge specific expenses as excessive or unnecessary, which—with the exception of contesting a charge for postage of courtesy copies—TES has failed to do. The Court is satisfied that the expenses listed were actually incurred, and declines to require pages upon pages of printouts from copy machines, telephone bills, or receipts from a messenger service absent any reason to doubt plaintiffs' representations.

TES also argues that plaintiffs cannot recover the fee for a declaration by plaintiffs' expert, Michael Kunkel, because he does not qualify as an expert and because expert fees are a separate element of litigation costs from attorney fees and are not permitted under Rule 37. Neither objection detains the Court for long. The Court need not resolve Kunkel's qualifications under the Federal Rules of Evidence at this stage. For present purposes, it suffices that his declaration was properly before the Court when considering the Second Motion, and that the expense for the declaration—which was, as could be expected, quite helpful to the Court's resolution of the motion—was reasonably incurred. And whether the Kunkel fee is viewed as an

expert fee or another expense, it clearly falls within Rule 37(b)'s provision directing taxation of "reasonable expenses, including attorney's fees." <u>See</u> Fed. R. Civ. P. 37(b)(2)(C). Although (as TES argues) the phrase "attorney's fees" does not generally encompass "expert fees," <u>see</u> <u>W. Va. Univ. Hosps., Inc. v. Casey</u>, 499 U.S. 83, 88 (1991), the phrase "reasonable expenses" does, <u>see</u> <u>id.</u> at 99 (a provision allowing "reasonable litigation expenses"—unlike one referring solely to "attorney's fees"— encompasses expert fees).

### D.  Final Award under Rule 37(a) and Rule 37(b)

 Making these reductions, the Court will award plaintiffs $41,047.94 in reasonable expenses, including attorney fees, for the First Motion under Rule 37(a)(5)(A). The Court will award plaintiffs $18,861.25 in reasonable expenses, including attorney fees, for the compensable portion of their work on the Second Motion under Rule 37(b)(2)(C). TES shall hence pay plaintiffs $59,909.19.

### <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to vacate is **GRANTED IN PART**; it is further

**ORDERED** that [121] the Court's September 25, 2012, Order is hereby modified in that the adverse instruction the Court will give the factfinder shall be a permissive, rather than mandatory, instruction as described in this opinion, and in that attorney fees for the Second Motion are awarded under Federal Rule of Civil Procedure 37(b) rather than under Federal Rule of Civil Procedure 37(a); and it is further

**ORDERED** that defendant shall pay plaintiffs $59,909.19.

**SO ORDERED**.

_____/s/_____

JOHN D. BATES

United States District Judge

Dated:  <u>March 1, 2013</u>