# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JARROD BECK, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil No. 1:04-CV-01391 (RCL)** |
| | ) |
| **TEST MASTERS EDUCATIONAL** | ) |
| **SERVICES INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

Before the Court are the plaintiffs' motion ([154] and [158]) for summary judgment and the defendant's cross-motion ([157] and [159]) for summary judgment. For the reasons stated below, plaintiffs' motion for summary judgment will be GRANTED, and defendant's motion for summary judgment will be DENIED.

## I.     BACKGROUND

The relevant facts are as follows: hoping to attend law school beginning in the fall of 2004, plaintiffs Jarrod Beck, Keerthi Reddy, and Erin Galloway signed up for an LSAT prep course with defendant, Test Masters Educational Services, Inc. ("TES"). Plaintiffs claim that they believed they were signing up with TestMasters, a company known as Robin Singh Educational Services, Inc. ("Singh"). Both companies offer test preparation classes for standardized tests such as the LSAT. Plaintiffs brought claims of common law fraud and negligent misrepresentation, as well as claims under the D.C. Consumer Protection Procedures Act ("CPPA"), 28 D.C. Code § 28-3904(e), (f), (s), arising out of plaintiffs' purported confusion

between the LSAT preparation courses offered by Singh and those offered by TES. Docket No. 30, Exh. 21, pp. 10–12.

This case comes before the Court after a tortured history, having been before two other judges before ending up here, on remand from the U.S. Court of Appeals for the D.C. Circuit and on transfer from Judge John Bates of this Court. Even before that, there is a documented history of Singh filing lawsuits against TES alleging trademark violations in order to prevent TES from doing business under that name. Singh's previous suits have been unsuccessful. TES claims that this losing history is driving the current, allegedly meritless suit brought by plaintiffs, which is why TES moved for sanctions based on alleged impropriety.

This action began in the Superior Court for the District of Columbia, and was removed to this Court based on diversity jurisdiction. After being transferred to Judge Vanessa Gilmore in the U.S. District Court for the Southern District of Texas, for Multi District Litigation proceedings, this case came back to this Court where Judge Robertson granted summary judgment in TES's favor on all counts brought by the plaintiffs. Further, Judge Robertson denied TES's sanctions motions—one based on Federal Rule of Civil Procedure 11 and one based on 28 U.S.C. § 1927 and the court's inherent power—"without prejudice." Plaintiffs appealed the ruling granting summary judgment against them, and TES appealed the rulings denying without prejudice their motions for sanctions against plaintiffs and their counsel.

On the appeal of Judge Robertson's summary judgment decisions, the D.C. Circuit affirmed the grant of summary judgment on the common law fraud and negligence claims, but reversed as to the D.C. CPPA claims for statutory damages. *Beck v. Test Masters Educ. Servs., Inc.*, 407 Fed. Appx. 491, 2011 WL 318403 (D.C. Cir. Jan. 31, 2011). The D.C. Circuit stated that plaintiffs' statutory claims could continue and granted limited discovery as to those claims.

Now, both plaintiffs and defendant have filed motions for summary judgment as to the D.C. CPPA claims.

## II.     PLAINTIFFS' ALLEGATIONS

The thrust of plaintiffs' allegations is that when plaintiffs called to sign up for the TES class, TES failed to correct their alleged misunderstanding that the TES LSAT preparation course in which they enrolled was not the LSAT course run by Singh. Plaintiffs allege that when they talked to a TES representative, they mentioned that they were looking for the course recommended by a friend who had taken the course in a certain location—a location that both parties admit TES had never held an LSAT course—and the TES representative failed to say that TES had never conducted a course there.

## III.    LEGAL STANDARDS

### A.  LEGAL STANDARD FOR VIOLATIONS OF THE D.C. CPPA

The relevant alleged unlawful practices in this case are set forth in D.C. Code § 28–3904(e) and (f):

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>      (e) misrepresent as to a material fact which has a tendency to mislead;
>      (f) fail to state a material fact if such failure tends to mislead;....

The court will look at an alleged misrepresentation "in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung,* 961 A.2d 1067, 1075 (D.C. 2008). Due to the CPPA's remedial nature, the CPPA must "be construed and applied liberally to promote its purpose." D.C. Code § 28–3901(c). As a result, Section 28–3904(e) and(f) reflect the same intent of other legislators enacting "State consumer protection statutes . . . to overcome the pleadings problem associated with common law fraud claims by

eliminating the requirement of proving certain elements such as intent to deceive and scienter." *Fort Lincoln Civic Ass'n, supra,* 944 A.2d at 1073 n. 20 (citations omitted); *Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013).

Thus, under the D.C. CPPA, a plaintiff does not have to allege or prove *intentional* misrepresentation of failure to disclose in order to prevail on the claim. *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 173–74 (D.D.C. 2013). A plaintiff must, however, allege a material fact that tends to mislead. *Id.* To ascertain the definition of "material," the court will look to that which appears in § 538(2) of the Restatement (Second) on Torts:

> The matter is material [if]:
> (a) a reasonable man [or woman] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question; or
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable man [or woman] would not so regard it.

While ordinarily, the question of materiality is one for the jury (and not a matter of law), there are some cases where a statement's importance to a reasonable consumer is readily apparent and can be resolved by the court.

## B.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see generally Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). In such a proceeding, the party who would bear the burden of proof at trial—the plaintiff—bears the burden of proof in

summary judgment. *Celotex*, 477 U.S. at 322. All justifiable inferences are to be drawn in favor of the non-moving party, as the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248; *Anderson*, 477 U.S. at 255.

Further, "[t]he non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 479 F. Supp. 2d 136, 140 (D.D.C. 2007). If a party fails to support a factual dispute with evidence in the record, "the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

There must be a showing more than "some metaphysical doubt as to the material facts" for a nonmoving party to succeed. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputes over a material fact must be genuine—meaning the evidence is such that a reasonable jury could find for the nonmoving party. *Mason v. United Airlines, Inc.*, 274 F.3d 314, 316 (5th Cir. 2001). In this way, a material fact has the potential to affect the outcome of the lawsuit under the governing law. *Id.* "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

## IV.   DISCUSSION

### A.  THE D.C. CODE APPLIES TO THIS SUIT.

This case—unlike *Shaw v. Marriott Int'l, Inc.* and *Margolis v. U-Haul Int'l, Inc.*, which are cited by TES—has sufficient connections to the District of Columbia for the D.C. Code to apply. "District of Columbia courts apply two tests in determining which jurisdiction's law should govern a dispute: a 'governmental interests analysis' and a 'most significant relationship'

test." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010). Here, both confirm that D.C. law should apply to this dispute.

First, the "governmental interests analysis" instructs courts to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 (D.C. 1989). Under this test, the common refrain is that D.C. "has an interest in protecting its own citizens from being victimized by unfair trade practices and an interest in regulating the conduct of its business entities." *Id.* Further, the D.C. CPPA does not limit its application only to consumers or companies who are residents of D.C.— the Code has been applied to other claims. *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180–82 (D.C. Cir. 2006) (applying CPPA to claims brought by non-residents); *Williams v. First Gov't*, 176 F.3d 497, 499 (D.C. Cir. 1999) (applying CPPA to non-resident business). While Galloway and Reddy are not D.C. citizens, Beck is a D.C. citizen.[1] And while TES is not incorporated in D.C., it conducts LSAT classes in D.C. for D.C. residents— something that the D.C. government surely has an interest in regulating. As such, D.C. law applies under the governmental interests analysis.

Second, under the "most significant relationship test," the D.C. Court of Appeals examines the factors under the Restatement (Second) of Conflict of Laws: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971); *see Oveissi v. Islamic Republic of*

---

[1] Having one party who is a D.C. resident was a key factor in deciding to apply D.C. law in *Washkoviak*, *Williams*, and *Margolis*.

*Iran,* 573 F.3d 835, 842 (D.C. Cir. 2009). Here, the alleged injury took place over the telephone lines, connecting a TES representative in Houston, Texas with plaintiffs in Cincinnati, Ohio; College Park, Maryland; and Washington, D.C. The calls centered on taking a TES-run LSAT class in the Washington, D.C. metro area. Further, TES has not proposed a jurisdiction which would be more related or more interested in adjudicating this dispute; nor has any of the other judges involved in this case—including those on the D.C. Circuit—expressed concern over the applicability of D.C. law. Thus, the D.C. Code appropriately governs this dispute.

### B.  THE PHONE CALLS WITH PLAINTIFFS AND TES AGENTS ESTABLISH ALL ELEMENTS OF THE D.C. CPPA CLAIMS.

As to the main claims being evaluated here, plaintiffs have met the burden of proof in establishing the elements of their individual D.C. CPPA claims, and the defendant has failed to sufficiently address those claims such that summary judgment would be denied.

Given the history between Singh's company and TES, TES knew of the potential for confusion among consumers regarding the two test preparation companies. Even without this knowledge, a reasonable consumer would expect that a sales representative for a test preparation company would be versed in the locations of course offerings past and present—given the service the company provides, it seems like requisite knowledge for proper customer service.

Even if the representatives did not know where TES held LSAT courses in the past, the thrust of the D.C. CPPA is much more liberal than common law fraud claims—no proof of intent is required by the alleging party. Plaintiff must only establish that defendant made a misrepresentation—affirmative *or implied*—to prevail on the Section 28-3904(e) claim. *Saucier*, 64 A.3d at 442–43. Under Section 28-3904(f), plaintiff need not prove intentional failure to disclose in order to prevail, but must prove only that defendant failed to disclose a material fact.

Further, the disclosure need not be required for plaintiff to successfully prove the claim. *Id.* at 442. The proper inquiry is whether the material omissions had the *tendency* to mislead.

On this question, the facts are clear. Plaintiffs stated in their sworn statements that when they called TES, they stated that a friend took a course in Washington, D.C. and that was why the plaintiff was calling—to sign up for that D.C. course. TES admitted that the proper course of action in this circumstance would be for the TES agent to inform the caller that they never held a LSAT course in that location.

But TES has never come forward with any evidence to dispute that their agents said nothing. TES has not provided evidence countering the plaintiffs' sworn testimony—not even recordings of the TES agents' phone calls that TES claims were often recorded, or identities of the employees answering TES's phones at that time. Instead, it is undisputed that TES *never* held a course in Washington, D.C. It is undisputed that TES *never* held a course in Cincinnati, OH. And it is undisrupted that TES *never* held a course in College Park, MD. In fact, it is undisputed that TES never held a live LSAT preparation course prior to 2003 at all.[2] Any reasonable consumer signing up for a course due to word-of-mouth suggestions and representations would want to know a fact that would make it absolutely impossible for them to have found the course they were looking for—this could not have been the class their friends took because there was never a prior TES live course—anywhere.

Thus, this is a *material* fact: one that consumers would have wanted to know in making their decision and one that customer service representatives should have known. Roger Israni, President of TES, even admitted in his deposition that an omission such as the one plaintiffs'

---

[2]     TES's website is another alleged source of misrepresentation, though there is no evidence in the record for the Court to rely on whatsoever in determining what the website truly represented. According to plaintiffs, TES's website stated that they had been offering test preparation services for a variety of examinations, *including the LSAT*, since 1991. In actuality, TES did not begin test preparation services for the LSAT until 2003.

allege—failing to correct a consumer who indicated that he or she wanted to take a TES course based on the recommendation of a student who took a Singh-course in a location where TES never held a course—would be misleading. By not failing to correct plaintiffs or disclose the actual history of TES LSAT courses in the face of consumer confusion, TES affirmatively and impliedly *misled* plaintiffs.

### C.  ANY REQUESTED RELIEF FOR THE "GENERAL PUBLIC" IS DENIED.

In regards to any relief requested by plaintiffs on behalf of the "general public," that claim is denied for two main reasons. First, plaintiffs have only sued in their individual capacities. They have not sought class certification and they cannot sue in both their individual and representative capacities as a result. Second, starting in 2004, TES class participants were required to sign an enrollment form with an explicit disclosure about the ownership of TES's course and the potential confusion that may arise with Singh's company. That disclosure is sufficient to put those participants on notice of the two companies and waive the claim of misrepresentation or omission.

### D.  DAMAGES AWARDED

Under the D.C. CPPA, to obtain a punitive damages award, a plaintiff must prove that the defendant engaged in egregious conduct and displayed the requisite mental state—actual malice—by clear and convincing evidence. *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 725–26 (D.C. Cir. 2003); *Osbourne v. Capital City Mortg. Corp.*, 727 A.2d 322, 326 (D.C. Cir. 1999). Punitive damages are a form of punishment, used to deter and punish unlawful conduct. *Id.* For example, "in the absence of 'gross fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages." *Id.* (citing *Boynton v. Lopez*, 473 A.2d 375, 377–78 (D.C. 1984)).

This is decidedly not the type of conduct present in this case. This matter has exemplified dilatory tactics by both sides and the suit has questionable motivations. Despite the D.C. CPPA violation through the failure to disclose certain information and the misleading nature of defendant's conversations with plaintiffs, the conduct falls far short of gross fraud. As such, punitive damages are improper and plaintiffs' request for such an award is denied.

As to the other damages available under the statute—treble damages and reasonable attorney's fees—the Court's decision is governed by D.C. Code § 28-3905(k)(2). The statute states that a plaintiff *may* recover "(A) Treble damages, or $1,500 per violation, whichever is greater, payable to the consumer; (B) Reasonable attorney's fees." Based on review of plaintiffs' extensive submissions to this Court, plaintiffs have not submitted any evidence to this Court upon which it can consider a claim for compensatory damages. Further, such a request is absent from plaintiffs' summary judgment motion [154, 158]. The only request is attorney's fees and punitive damages.

In this Court, attorney's fees are considered a collateral matter and will be considered upon submission of a separate application. In accordance with Local Rule 54.2(a), this Court encourages the parties to meet and confer on this matter in an attempt to agree on a reasonable amount of attorney's fees. If that process fails, the Court will consider the matter at a later time upon receipt of the application.

## V.    CONCLUSION

The Court does note Singh's history of litigation against TES. Despite that past, even on appeal, the D.C. CPPA claims in this suit were allowed to proceed, defeating any arguments as to the suit being "completely unmeritorious." Further, TES's behavior in this case has been far from

model conduct, resulting in sanctions awarded by Judge Bates due to discovery violations and a denial of sanctions against plaintiffs by this Court.

As a result, the Court holds that TES's motion for summary judgment is denied with prejudice and plaintiffs' motion for summary judgment is granted.[3] This grant of summary judgment stems from the lack of dispute over the elements of plaintiffs' claim. And instead, plaintiffs proved that TES made these statements to plaintiffs; the statements were material (a reasonable consumer would have wanted to know that information); the statements had the tendency to mislead (the required level of proof); and the statements actually misled them into signing up for the TES course instead of Singh's course (not a required element, but helpful to this finding). That is all that is required for TES to be held liable under the CPPA and as a result plaintiffs are entitled to summary judgment.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, U.S. District Judge, on December 18, 2013.

---

[3]     Again, plaintiffs' D.C. CPPA claims on behalf of the "general public" are denied. Only the individual D.C. CPPA claims have been granted summary judgment.