**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BECK, et al.,

       Plaintiffs,

          v.

TEST MASTERS EDUCATIONAL SERVICES INC.,

       Defendant.

1:04-CV-01391-RCL

Judge Royce C. Lamberth

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND EXPENSES
PURSUANT TO JUNE 20, 2014 ORDER**

## I.    INTRODUCTION

Pursuant to the Court's December 18, 2013 and June 20, 2014 Orders, Plaintiffs Jarrod

Beck, Keerthi Reddy, and Erin Groeber née Galloway ("Plaintiffs") submit this second Fee

Petition documenting the reasonable attorneys' fees and expenses to which they are entitled. As

directed by the Court, the parties met and conferred "in an attempt to agree on a reasonable

amount of attorneys' fees" owed to Plaintiffs [Docket No. 219, at 6], but those efforts failed.

Specifically, Defendant TES continues to assert that Plaintiffs are not entitled to any fees at all,

though it has not voiced a single objection to the reasonableness of the any of the specific fees

sought by Plaintiffs. At most, TES says, it would stipulate to an award of $25,000. That amount

is but a small fraction of the fees and costs Plaintiffs incurred over a ten-year period to obtain

their statutory damages, in the face of TES's scorched-earth litigation tactics.   TES adopted this

aggressive litigation posture with full knowledge that under the CPPA's fee shifting provision

TES would be responsible for Plaintiffs' attorneys' fees if it ultimately lost this case.

This fee petition is supported by the detailed explanations in the original Zavareei

Declaration ("HAZ Decl.") [Docket Nos. 203-01 to 203-10] and the Second Declaration of

Hassan A. Zavareei ("Second HAZ Decl." or "Second Zavareei Declaration").  Plaintiffs have re-filed the original Zavareei Declaration with this petition for the Court's convenience.  The Second Zavareei Declaration provides the supporting information and documentation for the fees and expenses incurred since the date of the original fee petition.  Both declarations and supporting documentation are consistent with the information and documentation previously approved by the Court in Plaintiffs' request for fees and expenses incurred in connection with a discovery-related fee request considered by the Court.  [Docket No. 138 at 1, 13-21].  In that earlier fee dispute, the Court rejected most of TES's arguments relating to the fee documentation provided by the Plaintiffs to the Court, and accepted all but one of the attorney fee rates as reasonable.  *Id.* at 13-14.  The rates employed by the Court in that ruling included rates actually billed in this litigation and rates contained in the *Laffey* Matrix issued by Civil Division of the United States Attorney's Office for the District of Columbia.  *Id.*

Using the rates previously approved by the Court, along with (1) the *Laffey* rates for timekeepers not previously subject to a fee petition in this matter and (2) below-*Laffey* rates actually invoiced through mid-2010, along with the aforementioned discounts and reductions applied to the attorneys' fees and expenses, the total amount sought in this Fee Petition is **$963,415.85**.[1]  As the Court previously observed, these rates "fall below the prevailing market rates and are well within the range of reasonableness accepted by the D.C. Circuit."  [Docket No. 138 at 14].  *See* HAZ Decl. ¶¶ 35-51.

---

[1] Plaintiffs are requesting the fees as they requested in their January 31, 2014 fee petition [Docket No. 203] plus a portion of the fees that they have incurred since the date that fee petition was filed.  Specifically, Plaintiffs are seeking $38,177.99 in additional fees and expenses.  Plaintiffs actually incurred greater fees in recent months, but made significant discretionary cuts of $9,497 to arrive at the aforementioned figure.

The original Zavareei declaration and Second Zavareei declaration, and their supporting documents, show that Plaintiffs' fee petition includes massive discretionary cuts and discounts amounting to **$192,130.30**—representing a **reduction of 17%**. Based on the same criteria applied by the Court in its December 18, 2013 Order (which applied an across the board cut of 10%), Plaintiffs are entitled to recover the entire amount they seek, which has been reduced by 17% of the actual fees incurred.

Although this may seem like a large fee request, in the context of this case, it is not. For nearly a decade, TES has employed numerous procedural vehicles to avoid the resolution of this case on the merits. The billing records demonstrate that Plaintiffs' fees were driven up by TES's aggressive procedural maneuvers and Plaintiffs' reasonable efforts to uncover the evidence of TES's deceptive conduct. After countless delay tactics, the Court was finally able to review the facts in this case and found that TES could "never come forward with any evidence" refuting the Plaintiffs' evidence that it deceived them. [Docket No. 197 at 8]. TES should not be now heard to complain about the high costs of this litigation when its own deliberate tactics to avoid resolution on the merits are the reason that this case was not resolved long ago.

## II.  PROCEDURAL HISTORY

On December 18, 2013, the Court entered an Order and Memorandum Opinion ("Order") granting Plaintiffs' Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment. [Docket Nos. 196, 197]. As part of that Order, the Court held that Plaintiffs were entitled to reasonable attorneys' fees and directed the parties to meet and confer regarding the fees, stating that it would "only consider the matter at a later time if the parties fail to reach an agreement over fees." [Docket No. 196]. Plaintiffs attempted to meet and confer with counsel for TES. TES declined to meet and confer. Instead it filed a Notice of Appeal of the

Court's interlocutory orders.  [Docket No. 199 at 28]. In order to comply with the Court's Order, Plaintiffs filed a fee petition even though they were unable to meaningfully meet and confer with TES.  [Docket No. 203].

After the Court of Appeals dismissed TES's appeal as premature, the Court ruled on Plaintiffs' Motion For Entry of a Monetary Judgment and to Set an Evidentiary Hearing on Plaintiffs' Request for Injunctive Relief.  [Docket No. 200].  In its June 20, 2014 order, the Court granted that motion as to Plaintiffs' request for statutory damages pursuant to the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3905(k)(2)(A). [Docket Nos. 218, 219]. The Court held that each Plaintiff is entitled to the CPPA's "default payment" of $1,500 because, *inter alia*, they were "able to show causation, but cannot prove the amount of pecuniary damage suffered as a result." [Docket No. 219, at 5-6 (citing *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 9 (D.D.C. 2002)].  The Court denied Plaintiffs' request for an evidentiary hearing on injunctive relief. [Docket No. 219, at 3].

Then, the Court concluded that "[t]he only outstanding matter in this case is the plaintiffs' motion [203] for attorneys' fees."  *Id*. at 6.  Based on the Court's observation that that the parties' prior meet and confer efforts related to attorneys' fees were "complicated by confusion as to whether the Court's summary judgment opinion was a final appealable order[,]" the Court denied Plaintiffs' motion for attorneys' fees without prejudice.  *Id*.

Because that issue is now resolved—namely, the Court of Appeals has since ruled that the Court's prior summary judgment opinion was not a final appealable order—this Court "again encourage[d] the parties to timely meet and confer on this matter in an attempt to agree on a *reasonable amount* of attorneys' fees."  *Id*. (emphasis added).  Should the parties fail to reach

agreement as to the "reasonable amount of attorneys' fees" owed to Plaintiffs, the Court directed Plaintiffs to file a new motion for attorneys' fees within 30 days. *Id.*

Consistent with the Court's instructions, Plaintiffs promptly began the meet and confer process.[2]  Immediately after receiving the Court's June 20, 2014 Order, counsel for Plaintiffs, Hassan Zavareei, sent counsel for TES, Kevin Jewell, an e-mail asking to schedule a telephone conference for meet and confer discussions. *See* Second HAZ Decl., Ex. 1, at 1.  Mr. Jewell did not respond to that e-mail, so Mr. Zavareei sent him another e-mail on June 23, 2014. *Id.*, at 3. Mr. Jewell's June 24, 2014 response ignored Mr. Zavareei's repeated requests for a telephone conference and indicated that TES would be sending a written proposal related to fees. *Id.*, at 4. Mr. Zavareei responded on the same day, indicating that Plaintiffs would respond to TES's proposal and again asking for proposed dates and times for a conversation. *Id.*  Counsel for TES sent that proposal on June 25, 2014, wherein TES argued (again and despite the Court's repeated rulings that Plaintiffs were entitled to attorneys' fees) that Plaintiffs were generally not entitled to any fees. *Id.*, at 5-7.  TES stated that it would stipulate to a fee of $25,000. *Id.*  TES also made references to settlement communications in support of some of its arguments.[3] *Id.*  TES's letter did not address the actual fees sought in the original fee petition, nor make any challenges to the reasonableness of the fees. *Id.*  TES's counsel also stated that TES would not engage in

---

[2] Concurrently with this Fee Petition, Plaintiffs have submitted the Second Zavareei Declaration. All of the most recent meet and confer correspondence between counsel for Plaintiffs and counsel for TES related to the issue of attorneys' fees is attached to that declaration as Exhibit 1. *See also* Second HAZ Decl. at ¶ 5.

[3] Because these prior settlement negotiations are inadmissible in these proceedings pursuant to Federal Rule of Evidence 408, Plaintiffs have redacted that portion of TES's letter that refers to those negotiations and have not attached the selected settlement correspondence that TES appended to its letter.  Plaintiffs have informed TES that that the negotiations are confidential and inadmissible and have asked them not to make any reference to those settlement communications to the Court or in these proceedings.

telephonic meet and confer discussions because he wanted to "ensure Test Masters' position is neither misunderstood nor misstated." *Id.*, at 7.

Plaintiffs sent a response letter on June 27, 2014, which refuted each of TES's arguments that purportedly supported its $25,000 offer, asked TES to offer concrete arguments for specific deductions from Plaintiffs' fee request, and repeated their request for a telephone conference. *Id.*, at 8-11. Plaintiffs also made an initial counter-offer of $963,415.85, which was based on the fees sought in Plaintiffs' January 31, 2014 fee petition [Docket No. 203] and some (but not all) of the attorneys' fees incurred since that time. *Id.*, at 10.

TES responded on July 3, 2014, ignoring all of the substantive points in Plaintiffs' prior letter. *Id.*, at 12. TES refused to counter Plaintiff's offer, but at the same time accused *Plaintiffs* of failing to negotiate in good faith. *Id.* Plaintiffs responded on July 11, 2014, again asking counsel for TES to speak via telephone and requesting that TES engage in "specific substantive discussions relating to specific items, including, for example, specific categories of fees, specific fee items, specific expenses incurred, and hourly rates used by specific attorneys." *Id.*, at 13-14. Should TES offer such objections to the reasonableness of any of the requested fees, Plaintiffs assured TES that they would consider those arguments and "if appropriate, remov[e] or reduc[e] specific items." *Id.* TES never responded to Plaintiffs' July 11, 2014 letter.

## III.   PLAINTIFFS ARE LEGALLY ENTITLED TO RECOVER FEES

The District of Columbia Consumer Protection Procedures Act ("CPPA") contains a fee-shifting provision that entitles prevailing claimants to recover "[r]easonable attorney's fees," among other remedies. D.C. Code § 28-3905(k)(2)(B). Because the Court awarded summary judgment in Plaintiffs' favor, Plaintiffs are entitled to recover reasonable attorneys' fees. [Dockets Nos. 196-97]. "To the extent that the statutory reference to 'fees' does not include an

attorney's 'costs,' . . . an award covering such expenses would be permitted as 'other relief which the court deems proper'" pursuant to D.C. Code § 28-3905(k)(2)(F).  *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 279 (D.D.C. 2009).

Courts have found that the CPPA's attorneys' fee provision *mandates* that prevailing Plaintiffs receive an attorneys' fee award; it is not a discretionary provision.  *See id.* at 279 n.4 ("The Court rejects defendants' unsupported implication that an authorizing statute must 'mandate a fee award' and that plaintiffs are not entitled to a fee recovery because 'any fee award under the [CPPA] is discretionary, not mandatory.'"); *Greene v. Gibraltar Mortg. Inv. Corp.*, 529 F. Supp. 186, 188 (D.D.C. 1981) (awarding CPPA attorneys' fees even where Plaintiff prevailed only on common law claims and not CPPA claim).

The fact that Plaintiffs' actual recovery in this case was small as compared to the amount of fees sought forms no basis to reduce a fee award.  That is especially true in this case because the attorneys' fees incurred in this case are directly attributable to the unreasonably frivolous defense tactics adopted by TES.  *See infra* Section IV.D.  This case compares favorably to *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738 (D.C. Cir. 2000).  In *Williams*, the D.C. Circuit affirmed the trial court's $199,340 attorneys' fee award to a plaintiff whose CPPA recovery amounted to only $8,400.  *Id.* at 743, 747.  Rejecting the defendant's argument that a CPPA attorneys' fee award must somehow be proportionate to damages awarded, the court held that, "Given the public policy interests served by the CPPA, we decline to read a 'rule of proportionality' into that statute.  Such a rule 'would make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small potential damages to obtain redress from the courts.'"  *Id.* at 747 (citing *DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d

699, 703 (D.C. 1999)) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986)) (ellipsis in original).

The reasoning from *Williams* is equally applicable here, and federal courts ruling on attorneys' fee requests pursuant to civil rights and other statutes frequently apply similar reasoning.[4] *See, e.g.*, *Rivera*, 477 U.S. at 574 (finding that while damages recovered could be relevant to fee award, "We reject the proposition that fee awards . . . should necessarily be proportionate to the amount of damages . . . ."); *Copeland v. Marshall*, 641 F.2d 880, 907 (D.C. Cir. 1980) ("[T]he primary purpose of the fee provision is to give persons victimized . . . the resources to vindicate their rights through litigation."); *Fitts v. Unum Life Ins. Co. of Am.*, 680 F. Supp. 2d 38, 40 (D.D.C. 2010) (awarding over $1 million in statutory fees and costs in case that "ha[d] been in the federal judicial system for over ten years"); *Greene*, 529 F. Supp. at 188 (awarding attorneys' fees even where fee-generating CPPA claims had not been reached).

## IV.    DISCUSSION OF FEE CALCULATION

Hassan Zavareei has been the lead counsel for Plaintiffs in this matter since its inception in 2004.  HAZ Decl. ¶ 4.  Other attorneys and paralegals at his law firm, Tycko & Zavareei LLP, have worked on this case under his supervision over the past 10 years.  *Id.* at ¶ 6.  From the case's beginning until early in 2010, the firm's invoices in this matter were paid by Robin Singh Education Services Inc. d.b.a. TestMasters ("Singh" or "TestMasters"), after which Singh withdrew its funding of the litigation.  *Id.* at ¶¶ 7, 20.  Consequently, the discussion that follows is broken into (1) the time period during which Singh paid invoices in this matter and (2) the time period from then until the present.

---

[4] In *Greene*, the court found an opinion from a Title VII matter instructive in its analysis of an attorneys' fee request brought pursuant to the CPPA.

**A.      Summary of Attorneys' Fees and Expenses Billed to Singh**

Plaintiffs are seeking a total of **$436,250.40** in attorneys' fees for the time period of February 2004 through June of 2010.  HAZ Decl. ¶ 16a and Ex. 3.  This amount is significantly less than the true value of fees for the hours worked on this matter during that time frame.  First, in the exercise of counsel's original billing judgment, numerous cuts were made prior to any invoice ever being sent to Singh.  *Id.* at ¶ 8.  Next—and in addition to those pre-invoice discretionary cuts—beginning in 2005, counsel for Plaintiffs began providing a 20% discount to all invoices billed to Singh.  *Id.* at ¶ 11.  The total value of the 20% discount to these invoices amounts to **$96,132.60**.  *Id.* at ¶ 16d.  Finally, prior to submitting the billing entries for the Court's review (HAZ Decl., Ex. 2), counsel for Plaintiffs made an additional second round of cuts and deductions for any time considered, in hindsight, to be unproductive or otherwise extraneous.  *Id.* at ¶ 8.  The total value of additional cuts and deductions made for the time period between February 2004 and June 2010 amounts to **$43,306.10**.  *Id.* at ¶ 16c.  Therefore, while Plaintiffs request only $436,250.40 for this time period in the instant Fee Petition, that amount is significantly less than Plaintiffs could ask for if (1) no second round of discretionary cuts and deductions had been made, and (2) no 20% discount had been extended to Singh.  Additionally, all hourly rates charged to Singh were reasonable and consistent with—and, after the 20% discount, in all cases lower than—the hourly rates previously accepted by the court and less than the timekeeper's *Laffey* rate.  *Id.* at ¶¶ 35-51.  Although the work was completed in years past, a recent court in this District evaluating the question of whether current *Laffey* rates should be used—rather than the rate that applied at the time the work was completed—approved of the use of current rates.  *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 248-49 (D.D.C. 2012).

In addition to attorneys' fees, Plaintiffs also seek to recover expenses incurred during the period between early 2004 and June 2010. *Id.* at ¶ 18-19 and Exs. 2-3. During that time period, Plaintiffs' counsel incurred $63,047.06 in out-of-pocket expenses, but this amount was reduced by $8,049.10 through the exercise of billing judgment. *Id.* at ¶ 19. Accordingly, Plaintiffs seek **$54,997.96** in out-of-pocket expenses for that time period.

To summarize, Plaintiffs seek **$436,250.40** in attorneys' fees and **$54,997.96** in expenses for the time period between early 2004 and June 2010, for a total of **$491,248.36**.

### B.      Summary of Fees and Expenses after Singh Ceased Funding the Litigation

To determine fees for the time period after Singh withdrew its funding of this litigation in 2010, counsel for Plaintiffs generated a pre-bill from the firm's billing software, applied billing rates, and made discretionary cuts. HAZ Decl. ¶¶ 20-21. Additionally, counsel deducted fees already awarded by the Court in its March 1, 2013 fee award. [Docket No. 138]. HAZ Decl. ¶ 20. Exhibit 5 to the Declaration of Hassan Zavareei contains billings entries for items not billed to Singh. *Id.* at ¶ 22-24. For hourly rates, counsel utilized the rates awarded by the Court in its March 1, 2013 order. [Docket No. 138 at 14]. HAZ Decl. ¶ 23. For timekeepers whose rates were not addressed in the March 1, 2013 order, counsel used the appropriate *Laffey* rate, which the Court utilized in its previous order for one attorney whose rate exceeded that of *Laffey*. [Docket No. 138 at 14]. HAZ Decl. ¶ 23. The table of requested hourly rates that follows lists each timekeeper that billed after Singh ceased funding the litigation, along with the hourly rate requested, and the source of the rate (either the Court's previous order, or the *Laffey* matrix):

| Attorney/Paralegal Name (Citation to Qualifications) | Laffey Rate | Hourly Rate Requested | Source of Hourly Rate Requested |
|---|---|---|---|
| Zavareei (HAZ Decl. ¶ 3, 34) | $510 | $400 | March 1, 2013 Order |
| Gold (HAZ Decl. ¶ 38) | $360 | $285 | March 1, 2013 Order |
| Williamson (HAZ Decl. ¶ 40) | $250 | $250 | March 1, 2013 Order |
| Flint (HAZ Decl. ¶ 41) | $450 | $450 | *Laffey* matrix |
| Silver (HAZ Decl. ¶ 43) | $250 | $250 | *Laffey* matrix |
| Monjay (HAZ Decl. ¶ 45) | $450 | $250 | March 1, 2013 Order |
| Gullickson (HAZ Decl. ¶ 47) | $145 | $60 | March 1, 2013 Order (amount awarded for other paralegals) |
| Prom (HAZ Decl. ¶ 49) | $145 | $60 | March 1, 2013 Order |
| Ressue (HAZ Decl. ¶ 50) | $145 | $60 | March 1, 2013 Order |
| Goschalk (HAZ Decl. ¶ 51) | $145 | $60 | March 1, 2013 Order |
| Berkowitz (HAZ Decl. ¶ 52) | $145 | $60 | March 1, 2013 Order (amount awarded for other paralegals) |

The total amount of attorneys' fees listed in Exhibit 5 sought by Plaintiffs, following discretionary cuts of $29,941.00, is **$381.502.50**.  HAZ Decl. ¶ 24.

Plaintiffs also seek to recover expenses incurred in connection with this matter for the period starting in June of 2010.  HAZ Decl., ¶ 29 & Ex. 7.  From June of 2010 until January 31, 2014 (the date of filing of Plaintiffs' last fee petition), counsel for Plaintiffs incurred expenses in the amount of $18,178.69.  *Id.*  After exercising billing judgment to make discretionary cuts of costs believed to be extraneous, counsel for Plaintiffs deducted expenses in the amount of $1,399.65.  HAZ Decl., *Id.*  Therefore, counsel for Plaintiffs seeks to recover $16,779.04 in out-of-pocket expenses for the period from June 2010 to January 31, 2014.  HAZ Decl., *Id.*[5]

---

[5] Plaintiffs are not seeking expenses previously awarded by the Court to Plaintiffs in connection with their earlier fee petition.  *See infra*, Section IV.B.1; *see also* HAZ Decl. ¶¶ 25-26, 30. Plaintiffs also do not seek the expenses incurred for the expert report of Michael Kunkel, which was previously awarded by the Court.  [Docket No. 138 at 20-21].  HAZ Decl. ¶ 31.

1. **The Amount Sought for this Time Frame Does Not Include Those Fees and Expenses Already Awarded by the Court Pursuant to Plaintiffs' Previous Fee Petition**

Excluded from Exhibit 5 to the Declaration of Hassan Zavareei were all fees and expenses previously awarded to Plaintiffs in the Court's March 1, 2013 order on Plaintiffs' previous fee petition.  [Docket No. 138 at 21].  HAZ Decl., ¶¶ 25-26.  Specifically, in the Court's March 1, 2013 order, Plaintiffs were awarded fees and expenses of $41,047.94 in connection with Plaintiffs' Motion and Memorandum of Points and Authorities Renewing in Part Their Previous Motions to Compel Discovery, or in the Alternative, for Issue-Precluding Sanctions.  [Docket No. 81; Docket No. 138 at 21].  Additionally, the Court awarded Plaintiffs one-third of the fees and expenses requested in connection with their Motion to Compel, for Issue-Related Sanctions, and for Monetary Sanctions ("Sanctions Motion"), for a total of $18,861.25.  [Docket No. 103; Docket No. 138 at 21].  Those fees and expenses, totaling $59,909.19, are not sought in this motion because they were already awarded.

2. **Plaintiffs Do Seek to Recover Fees and Expenses the Court Previously Declined to Award in Connection with Plaintiffs' Motion to Compel, for Issue-Related Sanctions, and for Monetary Sanctions**

Because the Court's March 1, 2013 order only awarded one-third of the fees associated with the sanctions motion, Plaintiffs are entitled to recover the remaining two-thirds.  Exhibit 6 to the Declaration of Hassan Zavareei summarizes the remaining fees sought by Plaintiffs not previously awarded by the Court in connection with the sanctions motion.  HAZ Decl., ¶ 27.  After accounting for 10.9 hours for which the Court disallowed a larger portion of the fees [Docket No. 138 at 18], Plaintiffs request the remaining two-thirds of fees that were not awarded in the March 1, 2013 order.  HAZ Decl., ¶¶ 27-28.  As calculated in Exhibit 6, this amount equals $34,153.65, which accounts for and includes a 10% reduction which the Court applied to

each of the time entries submitted in connection with that motion.  [Docket No. 138 at 19].  HAZ Decl., ¶ 28.

Plaintiffs also seek to recover the two-thirds of expenses that the Court did not award in its March 1, 2013 order.  HAZ Decl., ¶ 30.  Exhibit 8 to the Declaration of Hassan Zavareei lists expenses of $2,331.46 incurred associated with the sanctions motion.  *Id.*  Plaintiffs seek to recover two-thirds of that amount, for a total of $1,554.31.

### C.   Summary of Fees and Expenses since Filing of January 31, 2014 Fee Petition

Plaintiffs incurred significant additional fees since the filing of their January 31, 2014 fee petition—including, but not limited to, fees related to TES's failed appeal—and Plaintiffs are entitled to reimbursement of those fees.   To determine fees for the time period after Plaintiffs filed their January 31, 2014 fee petition, counsel for Plaintiffs generated a pre-bill from the firm's billing software, applied billing rates, and made discretionary cuts of approximately $9,500.  Second HAZ Decl. ¶¶8-9.  For hourly rates, counsel utilized the rates awarded by the Court in its March 1, 2013 order.  [Docket No. 138 at 14].  Second HAZ Decl. ¶ 10.  For timekeepers whose rates were not addressed in the March 1, 2013 order, counsel used the appropriate *Laffey* rate, which the Court utilized in its previous order for one attorney whose rate exceeded that of *Laffey*.  [Docket No. 138 at 14].  Second HAZ Decl. ¶ 10.  The total amount of attorneys' fees listed in Exhibit 2 sought by Plaintiffs since the filing of their January 31, 2014 fee petition, after discretionary cuts of $9,497.00, is **$36,871.00**.  Second HAZ Decl. ¶ 11.

Plaintiffs also seek to recover expenses incurred in connection with this matter from January 31, 2014 to the present.  Second HAZ Decl., ¶ 14 & Ex. 3.  From February 1, 2014 to June 26, 2014, counsel for Plaintiffs incurred expenses in the amount of **$1,306.99**.  *Id.*

**D.      TES is Directly Responsible For The Amount of Fees Plaintiffs Incurred**

Plaintiffs brought this case in the Superior Court almost ten years ago.  TES immediately

removed it to federal court, claiming that the case could result in compensatory damages of over

$300,000, punitive damages of over $90,000, and injunctive relief that would cost TES over

$75,000. [Docket No. 1 at 3-7].  Afterwards, TES filed a motion to stay or dismiss the case

[Docket No. 2], and then dragged it into multi-district proceedings before another district court in

Texas.  Once the case was in Texas, TES refused to cooperate in discovery and repeatedly made

numerous frivolous motions in a persistent attempt to morph this consumer protection case into a

proxy for its dispute with TestMasters.

Among other things, TES sought to use a "summary judgment motion" to seek sanctions

against Plaintiffs, to dismiss the case as frivolous, and to jail Robin Singh, the President and

Chief Executive Officer of TestMasters.  Plaintiffs incurred over $10,000 in fees responding to

that failed motion.  HAZ Decl., ¶ 33.  Whenever Plaintiffs sought simple discovery—such as the

identities of the TES employees who spoke to Plaintiffs—TES stonewalled.  While Plaintiffs'

motions to compel languished, TES filed another motion for summary judgment, which was

granted but then reversed in part by the D.C. Circuit.  At the same time it was refusing to

cooperate in discovery, TES was engaged in an all-out take-no-prisoners attack on Plaintiffs.  By

way of example only, TES refused to allow Plaintiff Reddy to withdraw from the case and even

threatened to drag her family into the lawsuit.  HAZ Decl., Ex. 9 (letters regarding Plaintiff

Reddy and deposition subpoenas to Reddy family).  TES's refusal to allow Reddy to drop the

lawsuit caused Plaintiffs to incur over $9,000 in fees.  Then, TES filed two meritless motions for

sanctions against Plaintiffs and their counsel, one under Rule 11 and one under Section 1927.

[Docket Nos. 51-52].  Plaintiffs incurred over $110,000 in fees defending themselves against

these baseless and procedurally improper sanctions motions—which TES raised three separate times. This Court ultimately dispatched the motions for the third time as "inappropriate" and indicative of TES "ignoring what has transpired in this case." [Docket No. 195 at 5] ("Due to the ruling of the D.C. Circuit, this Court fails to see how such sanctions could be granted based on TES's argument of lack of evidentiary basis.").

After the Court ruled that TES had to hew to its discovery obligations [Docket No. 121], TES claimed it had lost every relevant email and had no telephone recordings. TES refused to pay the $60,000 in consequent discovery sanctions ordered by the Court—forcing Plaintiffs to spend an additional $20,000 in legal fees dealing with TES's "flurry of frantic filings" aimed at delaying payment. [Docket No. 195 at 6]. Once it became clear that TES had absolutely no evidence to refute the simple claims of Plaintiffs, they sought summary judgment. After years of delay and relentless attacks, TES responded with no evidence of its own to counter Plaintiffs' evidence. [Docket No. 197 at 8] ("TES has not provided evidence countering plaintiffs' sworn testimony—not even recordings of the TES agents' phone calls that TES claims were often recorded, or identities of the employees answering TES's phones at that time."). And, once again, TES sought to distract the Court from the merits by reasserting its twice-rejected sanctions motions. As evidenced by TES's premature appeal of the Court's denial of those sanctions, it appears that Plaintiffs will have to defend themselves for at least a fourth time against these baseless accusations of misconduct. The Court has on two separate occasions condemned litigation positions taken by TES as (1) without "substantial justification" [e.g., Docket No. 128 at 19 n.10], and (2) and "frivolous" [Docket No. 146 at 2]. More recently, the Court observed that as a general matter TES "created a tremendous amount of unnecessary paper and frustrated the progress of this proceeding" [Docket No. 195 at 5].

In short, TES took a relatively straightforward consumer protection case and turned it into a modern day *Bleak House*; this case has dragged on for almost ten years, with no end in sight.  The drawn-out and expensive nature of this case is a creature of TES's own making.  In similar circumstances, the D.C. Circuit held that where one party engages in aggressive litigation conduct that causes the other party to incur substantial fees, it cannot be heard to complain that the prevailing party's fees were too high:

> The government's contentious litigation strategy forced the plaintiff to respond in kind. The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.

*Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*).  Plaintiffs respectfully urge the Court to require TES to shoulder the cost of its own aggressive conduct and pay the fees and expenses it owes Plaintiffs.

### D.     Plaintiffs Are Only Seeking 83% Of Their Actual Fees And Expenses

Plaintiffs' fee request of $**963,415.85** is entirely reasonable given the history of this case. This lawsuit has been pending for nearly 10 years, and, as discussed above, TES's litigation tactics necessitated these fees.  Moreover, as discussed in Sections IV.A, IV.B, and IV.C, *supra*, Plaintiffs are not seeking all fees that could be at issue in this request.  The following table summarizes the fees that Plaintiffs are *not* requesting:

| Category of Fees and Expenses *Not* Sought | Amount |
|---|---|
| Discretionary Omissions of Attorneys' Fees Billed to Singh (Section III.A.) | $43,306.10 |
| 20% Discount Given to Singh (Section (III.A.) | $96,132.60 |
| Discretionary Omissions of Expenses Billed to Singh (Section III.A.) | $8,049.10 |
| Discretionary Omissions of Post-Singh Attorneys' Fees (Section III.B.) | $29,941.00 |
| Discretionary Omissions of Post-Singh Expenses (Section III.B.) | $1,399.65 |

| 10% of Attorneys' Fees Not Awarded in 3/1/13 Order (Section III.B.2.) | $3,804.85 |
|---|---|
| Discretionary Omissions of Post-January 31, 2014 Fee Petition Attorneys' Fees (Section III.C.) | $9,497.00 |
| **TOTAL** | **$192,130.30** |

Although Plaintiffs are requesting $**963,415.85** in fees, the total prior to the above markdowns is actually $1,155,546.15.  Therefore, Plaintiffs fee request in this matter represents less than 83% of the total fees they could have requested in the absence of any markdowns.  No further reduction by the Court is necessary.

## V.    PLAINTIFFS HAVE PROVIDED SUFFICIENT DOCUMENTATION THAT THEIR HOURLY RATES AND EXPENSES INCURRED WERE REASONABLE

### A.    This Court Has Already Found the Hourly Rates Submitted in This Matter to be Reasonable

In its evaluation of Plaintiffs' previous fee petition, the Court discussed the reasonableness of hourly rates requested for the work performed by counsel and staff at the law firm employed by Plaintiffs in this matter.  [Docket No. 138 at 13-14].  The Court found that, "[w]ith one exception, [the] rates are less, and in most cases considerably so, than the *Laffey* rates."  [*Id.*].  As set forth in the table above, *see supra* Section IV.B. and HAZ Decl. ¶¶ 35-51, the hourly rates requested by Plaintiffs in this matter are either (1) rates previously awarded for work performed by attorneys in this matter, (2) rates actually charged to Singh that were lower than that set forth by *Laffey*, or (3) rates derived directly from *Laffey* for attorney timekeepers not addressed in the Court's previous fee award.  Therefore, as the rates requested by Plaintiffs are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" [Docket No. 138 at 13 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir 1995)], Plaintiffs' hourly rate request in the present Fee Petition is reasonable.

**B.    This Court Has Already Found that Documentation of Hours Worked and Expenses Incurred Similar to that Submitted by Plaintiffs in This Fee Petition was Sufficiently Detailed to Deem the Requested Number of Hours Reasonable**

Likewise, in its March 1, 2013 order, the Court evaluated and largely approved of documentation of work performed in connection with this matter similar to that submitted by Plaintiffs in the instant Fee Petition.  [Docket No. 138 at 14-20].  As they did previously, "plaintiffs provide a sworn declaration by a partner with attached hour logs reflecting the hours expended," and "[t]he hour logs are based on contemporaneously recorded time entries for the attorneys and paralegals involved, edited to reflect only the activities for which plaintiffs seek compensation."  [*Id.* at 14-15].  HAZ Decl., Exs. 2-5.  As with the previous petition, "[t]he declaration also describes plaintiffs' expenses, and the attached logs list the expenses with a description and, for most items, the date they were incurred."  [Docket No. 138 at 15].  As previously observed, "Plaintiffs offer a declaration that describes the process by which the records were produced: they were generated with the aid of their firm's time-keeping software and edited to omit . . . those hours removed in the exercise of billing judgment" and those fees and expenses previously awarded by the Court.   [*Id.* at 15-16].  HAZ Decl., ¶¶ 8-15, 18-19, 21-23, 25-31.  Such documentation should once again be "entirely sufficient 'to permit the…Court to make an independent determination whether or not the hours claimed are justified.'"  [Docket No. 138 at 16 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam) (alteration in original))].  The Court has previously recognized that the time records provided by Plaintiffs' counsel contained detailed explanations of complex work: "Plaintiffs' descriptions of how each block of time was spent are quite detailed and the Court notes the complex and fact-specific work these motions entailed."  [Docket No. 138 at 19].

In regards to non-attorneys' fee expenses, just as in Plaintiffs' previous fee petition, Plaintiffs have provided expense logs "supported by the supervising attorney's sworn declaration that these charges are 'a true and accurate reflection of out-of-pocket costs' that the law firm incurred."  [Docket No. 138 at 20].  HAZ Decl., ¶¶ 18, 29-32 and Exs. 2, 7.

## CONCLUSION

Plaintiffs are entitled to attorneys' fees and expenses incurred in connection with this matter, and they have submitted sufficient documentation for the Court to find that their hourly rates, hours spent, and expenses incurred were all reasonable.  Pursuant to the Court's ruling, Plaintiffs respectfully seek the following reasonable fees and expenses award:

| Category of Fees and Expenses Sought | Amount |
|---|---|
| Attorneys' Fees Billed To Singh (Section III.A.) | $436,250.40 |
| Expenses Billed to Singh (Section III.A.) | $54,997.96 |
| Post-Singh Attorneys' Fees (Section III.B.) | $381,502.50 |
| Post-Singh Expenses (Section III.B.) | $16,779.04 |
| Attorneys' Fees Not Awarded in 3/1/13 Order (Section III.B.2.) | $34,153.65 |
| Expenses Not Awarded in 3/1/13 Order (Section III.B.2.) | $1,554.31 |
| Post-January 31, 2014 Fee Petition Attorneys' Fees (Section III.C.) | $36,871.00 |
| Post-January 31, 2014 Fee Petition Expenses (Section III.C.) | $1,306.99 |
| **TOTAL** | **$963,415.85** |

Should the Court decide that, pursuant to Local Rule 54.2, a status conference is required to resolve Plaintiffs' fee petition, Plaintiffs will present any additional evidence requested by the Court at that juncture.

Dated:  July 21, 2014

Respectfully Submitted,

    /s/ Hassan A. Zavareei
Hassan A. Zavareei

Andrea R. Gold
TYCKO & ZAVAREEI LLP
2000 L Street, NW, Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (fax)
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2014, I caused the foregoing document to be

electronically filed using the CM/ECF system which will send notification of such filing to the

following:

Kevin Jewell
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY
1200 Smith Street, Suite 1400
Houston, Texas 77002

*Attorney for Defendant*
*Test Masters Educational Services, Inc.*

 /s/ Hassan A. Zavareei
Hassan A. Zavareei