IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JARROD BECK, ERIN GALLOWAY, and KEERTHI REDDY, | § § § | |
| Plaintiffs, | § § | |
| | § | NO. 1:04-cv-01391-RCL |
| v. | § § | |
| TEST MASTERS EDUCATIONAL SERVICES, INC., | § § § | |
| | § | |
| Defendant | § | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' PETITION FOR ATTORNEY'S FEES AND EXPENSES
<u>PURSUANT TO JUNE 20, 2014 ORDER</u>**

TO THE HONORABLE JUDGE ROYCE LAMBERTH:

**SUMMARY**

If there is any case deserving a complete denial of attorneys' fees in the "plaintiffs" favor,

it is this one.  The Court should soundly reject any fee award based on a host of compelling

factors, including these:

- Plaintiffs' counsel and his other client funding this suit, Robin Singh, seek a grossly abusive figure of almost **$1,000,000** in fees and expenses on a total recovery of **$1,500** per Plaintiff.

- Plaintiffs acted unreasonably in rejecting a settlement offer in 2005 for $5,000 each, over three times the amount this Court has awarded in statutory damages.

- Plaintiffs' overall lack of success and the disproportionate amount sought in relation to their "success."

- The offensive funding arrangement for this suit, rooted in champerty and maintenance.  This suit has been financed and directed by a non-consumer competitor of Defendant who lacks standing to recover fees and is not entitled to the DCCPPA's remedies or to indirectly benefit from his lawyer's fee recovery.

- Plaintiffs bore no risk and have no need for compensation.

- Plaintiffs have incurred no fees, and thus deserve none.

- Plaintiffs have waived any claim to fees.

- The Code does not mandate fees and a fee award here could not be more repugnant to the statutory purpose of fee recovery.

- The overarching equities of this case do not support fee shifting.

- Plaintiffs' failure to produce or submit admissible, probative, and contemporaneous time records sufficient to support their alleged fees/expenses, as well as their failure to designate an expert on the issue.

- Plaintiffs' assertions of objectively unreasonable positions throughout this case, including their unreasonable rejection of Defendant's initial settlement offer and their present fee motion.

- Other recognized reasonableness factors in this and other Circuits do not support fee recovery here.[1]

It is Plaintiffs' burden to prove reasonableness in light of these considerations.  *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd*., 248 F.R.D. 64, 68 (D.D.C. 2008).  They address none of them, and conceal many.   In accordance with Supreme Court precedent, the only reasonable fee for these Plaintiffs is either no fee at all, or a very nominal one.  *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 573-75 (1992).

---

[1]     *F.D.I.C. v. Bender*, 127 F.3d 58, 67 n. 6 (D.C. Cir. 1997) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  *Bender* cites factors such as:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Bender*, 127 F.3d at 67 n.6.

Even if the Court is inclined to grant some amount of fees, any recovery must be reduced drastically from the Plaintiffs' stunning request.  These three Plaintiffs have not paid, and will never pay, for the legal services provided "to" them; they would not even be Plaintiffs had they not been solicited by Singh; and, most important, they have lost on all causes of action and claims for relief except a solitary theory that was the least significant of all their inflated claims. The only beneficiaries of this proceeding are Singh and his lawyer—and that is so not because of any relief obtained but because they have together mounted a decade-long battle designed to rob its competitor of precious time and resources, all collateral to trademark litigation in Houston federal court.  The DCCPPA was not intended as a vehicle for merchants to sue other merchants. While no fee award is ever warranted in a case such as this, any liberality shown must be significantly tempered by all the surrounding circumstances and limited only to fees that are equitable and reasonable considering the circumstances as a whole.

## ARGUMENT AND AUTHORITY

1.     **Plaintiffs unreasonably rejected a 2005 settlement offer over three times the value of the ultimate statutory award.**

Beck, Galloway and Reddy were offered $5,000 each to settle this suit in January 2005. (Ex. 1).  This Court's June 20, 2014 judgment awards $1,500 per Plaintiff, less than one-third of the amount offered a decade ago.

Plaintiffs' counsel rejected that offer in February 2005, insisting that Defendant Test Masters pay $100,000 per Plaintiff, for a total of **$300,000**.  (Ex. 2).  Whatever the $300,000 counter demand was supposed to represent, it certainly was not attorneys' fees.  Plaintiffs' counsel's fees purportedly invoiced up to February 2005 were limited to only $40,000, according to his own fee invoice "excerpts", inadmissible as they are.  And discovery had yet to even begin at that time.  Additionally, Plaintiffs' counsel knew the Plaintiffs themselves were incurring no

fees because he negotiated those terms himself as part of his firm's agreements with the Plaintiffs and Robin Singh. (Doc. 154, Exs. 6, 7, 8, and 9).

In rejecting the January 2005 offer, Plaintiffs' counsel also insisted, on Singh's behalf, that Test Masters stop using the "Test Masters" mark. That demand was one of many efforts by Singh to accomplish what he has failed to accomplish in at least five lawsuits in the last fifteen years, that is, prevent Defendant Test Masters from continuing its valid use of the name it has enjoyed since 1991.

a.   Plaintiffs' offensive use of settlement negotiations waives any objection to them.

Plaintiffs do not want the Court to know that they rejected a reasonable inception of suit offer on the ground that it is in the nature of "settlement negotiations." (Doc. 221, at 5, n. 3). Accordingly, when they attached copies of counsel's recent negotiations regarding the fee issue to their petition (Doc. 221, Ex. 1), they redacted portions of those communications, and the related 2005 correspondence, based on Federal Rule of Evidence 408. (Doc. 221, at 5, n. 3). Their position is oddly two-faced, as the *entirety* of their Exhibit 1 consists of nothing but the type of "settlement negotiations" to which they have objected, and from which they have selectively redacted other "settlement negotiations." Apparently, they want the Court to see some settlement discussions, but not others.[2] But affirmative, offensive use of settlement offers waives any objection to them. *See Southern Railway Co. v. H.W. Vaughn*, 359 F.2d 424, 425 (5th Cir. 1966) (one who introduces evidence of settlement cannot later object to use of such evidence). *See also Brand Marketing Group, LLC v. Intertek Testing Services NA, Inc.*, 2014 WL 2094297, at *25 (W.D. Pa. 2014); *Jenkins v. U.S.*, 75 A.3d 174, 193, n. 26 (D.C. 2013) ("a

---

[2]   The Plaintiffs' attorneys have themselves characterized the June 2014 "meet and confer" correspondence on attorneys' fees as a "settlement communication" in their own billing "extracts." (Doc. 221-4, p. 7, June 25, 2014 entry). If they object to "settlement communications," one wonders why they have repeatedly attached such communications to their filings throughout this case.

defendant may waive an objection to the admission or use of improper evidence when he introduces such evidence himself"). So, Plaintiffs' objection is unfounded.

>    b.    The 2005 settlement communications are highly relevant and crucial to the present attorney fee issue.

Whether the Plaintiffs had a reasonable opportunity to avoid incurring the attorneys' fees they now seek from Defendant is extremely pertinent to whether such fees should be awarded, or in what amount. Evidence of relevant settlement negotiations can be considered to determine the objective reasonableness of a party's position. *See National Ass'n of Government Employees, Inc. v. National Fed'n of Fed. Employees*, 844 F.2d 216, 222 (5th Cir. 1988); *Lawrence v. Wilder Richman Securities Corp.*, 467 F. Supp. 2d 228, 233 (D. Conn. 2006). And settlement discussions or demands may be pertinent to the question of the reasonable value of a claim. *National Consumers League v. Flowers Bakeries*, LLC., 2014 WL 1372642, at *4 (D.D.C. 2014). Such offers certainly bear on the degree of success achieved, which, as discussed below, is a critical factor in the fee determination. Indeed, another judge in this District has held that evidence of offers resulting in a settlement under the DCCPPA are relevant considerations in assessing a fee award under the Code—and that plaintiffs may be entitled to recover attorneys fees related to a DCCPPA settlement. *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 279-280 (D.D.C. 2009). If offers resulting in settlement are relevant to the reasonableness of a fee, then offers *not* resulting in settlement are likewise relevant.

>    c.    The 2005 settlement communications are plainly admissible under Federal Rule of Evidence 408.

Plaintiffs' reliance on Rule 408 is baseless. Defendant Test Masters is not citing the 2005 settlement offer for any purpose prohibited by Rule 408, such as "to prove or disprove the validity or amount of a disputed claim" or "to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408. This Court has decided the value of the claim, so the use of a

prior settlement offer cannot influence the Court's decision on the amount of damages already awarded.

To the contrary, the prior settlement offer is crucial to Test Masters' position that Plaintiffs' requested fees are not reasonable because, among other things, they had the opportunity to settle this case at a more than reasonable value before unnecessarily incurring the fees Singh and his counsel want a competitor company to pay.  For purposes of fee shifting under the DCCPPA, Plaintiffs cannot be considered "successful" after having rejected Test Masters' 2005 offer only to lose all claims except the one of most nominal value and, as to that claim, recover only one-third of the original offer.  The settlement communications are necessary to illustrate that fact.  Such uses are clearly permissible under Rule 408's exception, which allows consideration of settlement discussions "for another purpose."  All Plaintiffs' counsel's fees incurred after January 2005 were entirely unnecessary to obtain the relief to which the Court has held Plaintiffs entitled.

     d.    <u>Plaintiffs further waived any complaint about the 2005 offer because they have allowed it to be repeatedly introduced in the record without objection</u>.

If Plaintiffs' offensive use does not itself waive objection to "settlement negotiations", their silence in allowing the 2005 settlement communications to repeatedly come before the Court certainly does.  Test Masters included the 2005 offer and response in the Court's record on many occasions with absolutely no opposition from Plaintiffs.  Consider these instances:

- In February 2010, Plaintiffs themselves raised the issue of the 2005 offer by referring to it in response to Test Masters' Motion for Rule 11 Sanctions (Doc. 62, at 26).

- In March 2010, Test Masters attached both the 2005 offer and Plaintiffs' response to its Reply to Plaintiffs' Response to Motion for Rule 11 Sanctions (Doc. 65, at 10; and Exs. 65-1, 65-2), *all without objection by Plaintiffs*.

- During the appeal from Judge Robertson's summary judgment, Test Masters moved to supplement the appellate record with a copy of Documents 65, 65-1 and 65-2. (Ex. 3). *Plaintiffs never filed an opposition to the inclusion of the 2005 settlement offer in the appellate record*, and those documents were included in the supplemental appendix at TMA 179-180. (Exs. 1, 2).

- Test Masters' Appellees' Brief in the appeal specifically referenced the 2005 settlement offer and response. (Ex. 4, at 27, n. 9). *Plaintiffs' reply brief raised no objection to consideration of these documents*.

- Test Masters' Reply Brief in the appeal specifically referenced the 2005 settlement offer and response. (Ex. 5, at 20). *Plaintiffs raised no objection to consideration of these documents*.

- In February 2014, Test Masters filed a response to Plaintiffs' first fee petition, in which it again discussed, and again attached, copies of the 2005 offer and response. (Doc. 206, at 17; and Exs. D, E thereto). Plaintiffs' reply brief objects to those documents under Rule 408. (Doc. 206, at 19, n.6). But this was the first time Plaintiffs raised any complaint about the 2005 offer and even this objection was perfunctory and unsupported by authority. It also came *four years* after the documents were first put in the record.

Thus, Plaintiffs' objection to consideration of the 2005 offer is not valid and has been long abandoned. Accordingly, Defendant attaches to this response full, unredacted copies of the parties' meet and confer correspondence dated June 25, 2014, and June 27, 2014, which Plaintiffs improperly redacted. (Exs. 6, 7).

Plaintiffs' rejection of the 2005 settlement offer is indispensable to the equity considerations that inform the fee-shifting determination.[3]   That they chose to forego a reasonable offer—at the outset of litigation, before discovery, and before incurring 96% of the fees they now claim—weighs heavily against their request.  Fee-shifting provisions, like the one in the DCCPPA, are not intended to allow plaintiffs to reject reasonable initiation of suit settlement offers in the hopes of saddling the defendant with exorbitant fee awards on the back end for claims of, at best, minimal value.  Rather, they are designed to redress the effect of a responsible party's refusal to pay, and the legal expense burden it puts on the aggrieved party as a result.  Here, in contrast, Test Masters was made to suffer an outrageous legal expense in defending a case of this sort despite having offered at the outset three times the amount the Court has said Plaintiffs are entitled to recover.  The 2005 offer was obviously well-considered in amount and extended to avoid precisely the colossal waste of resources Robin Singh and Plaintiffs' counsel have caused by this ongoing charade.

Awarding fees in circumstances like these leaves no incentive for plaintiffs to accept reasonable inception of suit offers.  It also permits the prospect of fee recovery to drive the suit itself.  The litigation becomes nothing more than an endeavor existing solely for the purpose of generating fees, as opposed to obtaining substantive, efficient, and cost effective relief for legitimately aggrieved parties.   If the fees a plaintiff incurs in pursuing a judgment are recoverable even though the defendant's early, and reasonable, offer exceeds the ultimate award, there is no consequence to the plaintiff for rejecting the offer and essentially failing in pursuit of unreasonable demands and claims for relief.  Failing to obtain a judgment matching an early

---

[3]     Equity concerns apply to the reasonableness of attorneys' fees.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139-140, 126 S.Ct. 704 (2005) (noting equitable considerations applicable to fee shifting act); *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 758-59, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) (Title VII fee shifting embraces equitable considerations).

reasonable offer leaves no basis for shifting responsibility for the Plaintiffs' vast fees incurred in their failed effort.  An award of anything more than nominal fees here only encourages further abusive behavior by imposing fees on opponents regardless of the merits.  For this reason alone, the Court should deny fees or limit them to the amount of Test Masters' proposed stipulation.

## 2. Plaintiffs are not "successful" for fee shifting purposes.

### a. The Court should award no fees.

Only "successful" plaintiffs have the prospect of recovering fees under fee-shifting statutes such as the DCCPPA.  *Brandywine Apts., LLC v. McCaster*, 964 A.2d 162, 169 (D.C. 2009) (the DCCPPA "allow[s] the [C]ourt to award a *successful* plaintiff attorney fees") (emphasis added); *FCE Benefit Administrators, Inc. v. George Washington Univ*., 209 F. Supp. 2d 232, 244-45 (D.D.C. 2002).  *See also Farrar*, 113 S.Ct. at 572-73 (discussing prevailing party status under § 1988).[4]   To be a prevailing or successful party, the plaintiffs must both: (1) succeed on a "significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit"; and (2) the relief obtained must directly benefit the plaintiffs. *Farrar*, 113 S.Ct. at 572-73.  Achieving some benefit from the suit means recovering at least some relief on the merits.  *Id*. at 572; *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 2675-76 (1987).

Despite the statutory award to the Plaintiffs, the overall results show they are not "successful" for purposes of fee shifting.  *Farrar* strongly supports such an outcome.  *Farrar* made clear that prevailing party status is required to support a fee award under fee-shifting

---

[4]      "Successful" and "prevailing" are synonymous terms.  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 603 (2001), *superseded by statute on other grounds,* Open Government Act of 2007, Pub.L. No. 110–175, 121 Stat. 2524 ("BLACK'S LAW DICTIONARY 1145 (7th ed. 1999) defines 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded .—Also termed *successful party*.'" (italics in original)).  *See also FCE*, 209 F. Supp. 2d at 244-45.

statutes such as the one at issue here.[5]  Yet in certain cases when plaintiffs obtain only minimal

relief, they should nonetheless "receive no attorney's fees at all" despite technically qualifying as

"prevailing" parties.  *Farrar*, 113 S.Ct. at 575.  This is just such a case and *Farrar's* teachings

apply here.  Assuming the Court's ruling that a DCCPPA omission occurred during a single

phone call ten years ago constitutes a "victory" for the Plaintiffs, it is a Pyrrhic one given the

backdrop of this dispute and the rejection of their excessive and unreasonable demands.  *Farrar*

thus supports the denial of any fee recovery.

Even if the Court concluded some award of fees was appropriate under *Farrar*, the Court

is otherwise within its discretion to deny fees altogether based on DCCPPA interpretive

authority.  Contrary to Plaintiffs' assumption, a fee award under the DCCPPA is *not* mandatory

even for successful plaintiffs.[6]  *See Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d

738, 746 (D.C. Cir. 2000).  *See also Brandywine Apartments, LLC*, 964 A.2d at 169; *Grayson v.

AT&T Corp.*, 15 A.3d 219, 259 (D.C. 2011) (Ruiz, J., concurring and dissenting).  *In re

InPhonic*, cited by Plaintiffs (Doc. 221, at 7), is not to the contrary.  In *InPhonic*, the defendant

argued that statutes *mandating* fee recovery were the only types of statutes justifying exception

to the "American Rule" that parties bear their own fees.  Further, the defendant argued, the

DCCPPA was not such a statute because it does not mandate fee recovery for successful

claimants.  *InPhonic*, 674 F. Supp. 2d at 279.  The court disagreed with the former proposition,

---

[5]     *Farrar* examined recoverability of fees under 42 U.S.C. § 1988, which is nearly identical to the language in the DCCPPA.  Section 1988 provides "the court, in its discretion, *may* allow the prevailing party. . . a reasonable attorney's fee as part of the costs." (emphasis added).  *Compare* D.C. Code § 28-3905(k)(1)(B).  *Farrar* involved whether a nominal damage award in a civil rights case supported a discretionary award of attorney fees under section 1988.  The Supreme Court held that a party obtaining nominal damages is a "prevailing party," but is nonetheless not entitled to recover attorney fees.  *Farrar*, 113 S.Ct. at 575-76.

[6]     The Court's December 18, 2013 Memorandum Opinion notably emphasizes the non-mandatory nature of attorney fees under the Code.  (Doc. 197, at 10) ("The statute states that a plaintiff *may* recover . . . (B) Reasonable attorney's fees.") (emphasis in original; internal quotation marks omitted).

and did not comment on the latter.  *Id.* at 279 n. 4.  Here, Plaintiffs misconstrue footnote 4 of *InPhonic* as holding that the DCCPPA mandates fee recovery for successful plaintiffs, when clearly the court made no such statement and no support for that assertion exists in the statutory text.  Nor does *Greene v. Gibraltar Mortg. Inv. Corp.*—Plaintiffs only other case offered for support—state anywhere that DCCPPA fee shifting is mandatory.[7]

Denying fee recovery here also comports with statutory policy.  The purpose of the DCCPPA is to protect consumers from unscrupulous practices by merchants.  *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 279 (D.D.C. 2011).  The Act was not intended to allow an indirect and abusive mechanism for merchants to sue and harass their competitors.  *See Hardy v. Joseph I. Sussman, P.C.*, 953 F. Supp. 2d 102, 110 (D.D.C. 2013).  And this Court should not permit or encourage business competitors to do indirectly what they cannot do directly.

     b.    <u>Alternatively, the Court should limit any award to a nominal one, given the overall lack of success.</u>

Because no fee award is permissible, the Court's inquiry should stop there.  *See Farrar*, 113 S.Ct. at 575.[8]  Given the lack of any success beyond that which, as here, is "purely technical or *de minimus*, a district court need not go through the usual complexities involved in calculating attorneys' fees."  *Id*. at 576 (O'Connor, J., concurring).[9]  In that circumstance, a court can

---

[7]    *Greene v. Gibraltar Mortg. Inv. Corp.*, 529 F. Supp. 186, 188 (D.D.C. 1981) (mem. op.) (Doc. 221, at 7).  However, *Greene* did not find that a fee award is mandatory or even reach the DCCPPA claim.  *Id*. at 188.  Additionally here, unlike *Greene*, Plaintiffs' common law claims were reached *and* denied.  *Compare id*. at 188.

[8]    Contrary to Plaintiffs' argument, *Williams* does not support their claims of reasonableness for a fee petition of this magnitude.  The present case is far more similar to *Farrar* than *Williams*.  Plaintiffs' success is merely technical in nature and, given the nature of the recovery, the only reasonable fee is no fee at all.  *See Farrar*, 506 U.S. at 115.

[9]    "As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimus* nature of the victory makes the proper fee immediately obvious."  *Farrar*, 113 S.Ct. at 576 (O'Connor, J., concurring).

rightfully deny a fee request without laboring through a reasonableness analysis. *Id.* ("Having considered the amount and nature of the damages awarded, the court may lawfully award low fees *or no fees* without reciting the 12 factors bearing on reasonableness.") (emphasis added). Nonetheless, application of the totality of all reasonableness factors and other considerations supports a finding of no or very little fee recovery because the hours expended on this litigation by Plaintiffs' counsel are not reasonable.

While courts generally begin with the "lodestar" method—the number of hours reasonably expended multiplied by a reasonable hourly rate[10]—if a party has achieved only limited success, the product of a "lodestar" analysis may be "excessive." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933 (1983). Among the factors bearing on reasonableness of a fee award, the degree of overall success is "the most critical." *Farrar*, 113 S.Ct. at 574. "[T]he extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded." *Hensley*, 103 S.Ct. at 1941. A party is entitled to recover fees *only* for work related to the claim on which he prevailed and the fees awarded on that claim must be reasonable in relation to the success achieved. *Williams*, 225 F.3d at 742. A reduced fee award is appropriate if the relief is limited in comparison to the scope of the litigation as a whole. *Hensley*, 461 U.S. at 436. Courts are necessarily reluctant to award fees for time expended on unsuccessfully, or unnecessarily, raised issues. *See Kennecott*, 804 F.2d at 766 (citing *Sierra Club v. E.P.A.*, 769 F.2d 796, 802 (D.C. Cir. 1985)). "A plaintiff should not be able to force his opponent to pay for the legal services involved in bringing groundless claims simply because those unsuccessful claims were brought in a lawsuit that included successful claims." *Sierra Club*, 769 F.2d at 801.

---

[10]     *DL v. Dist. of Columbia*, 256 F.R.D. 239, 242 (D.D.C. 2009).

Here, the recovery has been *de minimus* at best.  Reasonableness dictates nothing more than a *de minimus* attorneys' fee for nothing more than *de minimus* success.  First consider the relief obtained compared to the relief sought.  Plaintiffs pleaded multiple causes of action for fraud, negligent misrepresentation, and DCCPPA violations.  (Doc. 157-21).  The complaint is rife with now dismissed allegations that Defendant "intentionally" and "deliberately" deceived prospective students (Doc. 157-21, at 2, 8), made "blatantly false statements" (*Id*. at 10), willfully "tricked" students (*Id*. at 10, 11), "willfully failed to disclose" facts (*Id*. at 10, 11), and made false claims on its website (*Id*. at 10, 13).  Plaintiffs sought substantial and unlimited relief in the form of a preliminary injunction, a permanent injunction, monetary damages in an unspecified amount (particularly for "lost employment opportunities"), disgorgement of profits in an unspecified amount, treble damages or $1,500 per DCCPPA violation, and punitive damages.  (*Id*. at 13).  Plaintiffs claimed this relief not only on behalf of themselves, but purportedly for the "general public."  All these liability and damage claims were dismissed on summary judgment, save one.  As to that claim, Plaintiffs' standing to assert it was highly questionable.  And this Court ultimately awarded relief only for the three individual Plaintiffs, no others, and rejected all claims for compensatory damages, punitive damages, and injunctive relief.

Through the life of this case, Plaintiffs afforded little attention to the DCCPPA claim. From the beginning, this case was about proving supposed fraud and recovering damages for "lost employment opportunity" and earning capacity as a result of having taken one LSAT prep course over another.  (Doc. 65, at 11 [depositions attached thereto]; Doc. 65, at 12-13 [discussing Plaintiffs purported experts on these theories]).  The crux of Plaintiffs' desired relief all along was grandiose damages in the form of lost employment opportunities (they designated two

"experts" on the subject) and punitive relief.[11]   From 2004 forward, Plaintiffs aggressively reinforced their desire for expansive damages based on alleged lost employment opportunities and never emphasized—or proved, as the Court of Appeals held—any claim for out of pocket costs.  Plaintiffs unequivocally testified they sought damages arising out of and related to their eventual lost potential job earnings because of their purported mistaken enrollment in an allegedly less known LSAT preparation course.   Beck, for example, said he did not want a refund, but rather damages reflecting his "lost opportunities."   Groeber left no doubt that she sought "potential earnings."   Reddy cannot be said to be out of pocket for any amount—she took both courses for the price of Defendant's course.  The bottom line is this:  when asked what they wanted from this litigation, all the Plaintiffs focused on lost potential employment opportunities. Additionally, after summary judgment and remand, Plaintiffs placed new emphasis on their claimed relief to purportedly redress alleged wrongs on the "general public's" behalf.[12]   This Court rejected Plaintiffs' requested damages for "lost employment opportunity" years ago and was affirmed.  This Court has now denied all forms of pleaded relief with the sole exception of $1,500 statutory damages per Plaintiff.

Also important, the nature of the conduct supporting statutory damages was slight at best. The damages awarded are not based on any misrepresentation by Test Masters—the Court reiterated there were none as a matter of law—but on an amorphous grievance that unnamed persons at Test Masters failed to correct Plaintiffs' alleged misunderstandings about the course for which they registered and completed without complaint.   One of the Plaintiffs, Keerthi

---

[11]     Notably, in response to TES's motion to strike their experts, Plaintiffs vigorously argued that evidence establishing an adverse effect on their employment prospects was "***crucial*** to establishing Plaintiffs' damages."   (No. 4:04-md-1646, S.D. Tex. Doc. 241, p. 11 Sect. D) (emphasis added).

[12]     Plaintiffs, as ostensible public "representatives", asserted a desire to recover statutory damages on "behalf" of *every* D.C. area LSAT consumer.  (Doc. 162, at 29-33).

Reddy, was even a returning customer of the Defendant, having previously taken Defendant's SAT prep course.  She and her family were so satisfied with Test Masters' SAT course that they paid to fly Reddy's brother all the way from Fort Wayne, Indiana, to Houston so that he too could benefit from Test Masters' SAT program.  (Doc. 157, at 9-10).  Reddy actively searched for the Defendant when looking for an LSAT prep course.

Moreover, it is remarkable how very little of the time spent by Plaintiffs' counsel actually went to developing the evidence supporting the one DCCPPA claim on which the Court has ruled for them.  The real basis of the Court's finding of a code violation was the Plaintiffs' declarations.  But all of those existed in 2003.  According to the Court's ruling, the Plaintiffs needed little more than their own statements to give them adequate motivation to accept Test Masters' 2005 settlement offer.  Virtually all the subsequent discovery efforts have pertained to developing claims, and evidence supporting claims, the Plaintiffs have lost.

Plaintiffs' lack of attention to the DCCPPA statutory damage claim is again readily evident in their summary judgment response filed in 2008, and again in 2009.  Only *two paragraphs* of that document even mentioned the DCCPPA claim.  Within those two paragraphs, Plaintiffs addressed no issues other than their arguments for intentional conduct and punitive damages—claims they have lost.  (Doc. 29, at 14).

Even after the Court of Appeals remanded this case in 2010 leaving only the DCCPPA claim remaining, all Plaintiffs' efforts in the following three years were designed to gather discovery over time periods—2004 to 2010—and relating to persons—all D.C. LSAT consumers *other than* these three Plaintiffs—completely irrelevant and unnecessary to what the Court has found to be Plaintiffs' one valid claim.  They insisted they needed 2004-2010 discovery for punitive damages; they needed the discovery for their monumental claims on the general public's behalf; and they needed the discovery for injunctive relief.  *All* of that was a complete waste of

time, effort, and money, as Defendant told the Court it would be.  It added nothing to support the claims of *these three Plaintiffs*, or the product *they* purchased.  As the Plaintiffs lost as a matter of law on all claims to which that discovery pertained, and having obtained the discovery over Defendants' repeated objections in the first place, they have absolutely no legal or equitable justification to expect or ask the Defendant to reimburse them for those failed efforts.

Finally, further underscoring how inconsequential the individual Plaintiffs are to this entire proceeding, Plaintiffs' counsel spent much effort focused on matters important to *Singh* and advancing Singh's interests.  The complaint itself is tellingly drafted to emphasize allegations that Test Masters' conduct supposedly damaged Singh, even though he is not a party and such claims have no place in this suit.  Counsel's efforts further included substantial briefing advocating how Defendant's LSAT course was supposedly "inferior" to Singh's course or that the Defendant's course materials were purportedly of lesser quality.  But allegations such as these are objectively unreasonable in the context of *these* Plaintiffs' claims because they did not allege a DCCPPA violation based on section 28-3904(a) or (d), which are the only Code provisions that would support recovery for such factual allegations.[13]  The Plaintiffs got what they paid for and never pled entitlement to relief under subsections (a) or (d).

Of course, by Plaintiffs' admission, counsel *has been paid* by Singh for all the work up to at least 2010, including the minute parts of it that actually pertained to a DCCPPA statutory damage claim.  Counsel has received payment for the services claimed at least to 2010 and, again, the overwhelming majority of that compensated work related to claims they lost.  Accepting as true counsel's claim that he has not yet actually received payment for post-2009

---

[13]     Sections 28-3904(a) and (d) prohibit "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" and "represent[ing] that goods or services are of particular standard, quality, grad, style, or model, if in fact they are of another."  Plaintiffs never pleaded a violation of these DCCPPA provisions.

work, those efforts likewise relate to claims the Court rejected.  The Court should decline further reimbursement for all the reasons argued herein.

### 3. The gross disparity between the statutory award and the fees sought shock the conscience.

While *Williams* may have shunned a bright-line "rule of proportionality" for DCCPPA fee shifting purposes, there is definitely a rule of *reasonableness*—and "no precise rule or formula" governs.[14]  The fact of the matter is that Plaintiffs are demanding an attorney fee award equal to a staggering **21,300%** increase from the statutory damages awarded.  That's not a fees-to-damages ratio of 7 (as in *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686 (1986)), or even 8 (as in *Williams*, 225 F.3d at 747).  Nor is it on par with this Court's recent approval of a § 1983 fee award of *less than double* the damages.  *Nelson v. District of Columbia*, 967 F. Supp.2d 360, 363 (D.D.C. 2013) (Lamberth, J.).  In stark contrast to these cases, the Plaintiffs' **$963,000 request** is a jaw-dropping **214 times** the Court's $4,500 statutory award.  A request of such extraordinarily disparate proportion to the relief obtained should be denied outright.

The awards in *Williams* and other cases approving disproportionate fees were based on the offensive facts of those cases, and far different equities than presented here.  These Plaintiffs' statutory recovery, in comparison, is based on their least significant, and least valuable, claim.  The Court has held Defendant made no misrepresentations (online or otherwise), committed no fraud, and did not cause Plaintiffs—or the "general public"—one  iota of compensatory damage or "loss of life opportunities."  Whatever the import of *Williams*, it certainly cannot be read to endorse the approval of the Plaintiffs' request, which is so far from "reasonable in relation to the success achieved" as to be facially absurd.  *Hensley*, 461 U.S. at 436.

---

[14]     *Hensley*, 461 U.S. at 436.

Perhaps a better approach is to calculate a reasonable contingency fee that would accompany the judgment in Plaintiffs' favor, as was done by another judge in this District. *Zuckman v. Monster Beverage Corp.*, 958 F. Supp.2d 293, 301 (D.D.C. 2013) (applying 33% rate as contingency fee). This analysis would yield a reasonable fee of $1,500. Yet Defendant was willing to agree to $25,000. (Ex. 6). That amount—five times the ultimate recovery—is more than reasonable under the circumstances.

**4.    The champertous agreements at the core of this lawsuit weigh against fee shifting.**

As the Court is aware, this suit has been funded by a non-consumer industry competitor of Test Masters with the Plaintiffs serving merely as conduits. The agreements between Singh and Zavareei on the one hand, and Zavareei and the Plaintiffs on the other, are undisputed and contained in the record. (Doc. 157, Exs. 6, 7, 8, and 9). *Beck v. Test Masters Educ. Servs., Inc.*, 2011 WL 318403 at *1, n. 1 (D.C. Cir. January 31, 2011). Plaintiffs have paid no attorneys' fees—and will owe no attorneys' fees—in allowing these claims to be brought. (Doc. 157, Exs. 6, 7, 8 at p. 2). The Plaintiffs' retention agreements show that Singh is funding all "attorneys fees, litigation costs, and expenses" related to this action (Doc. 157, Exs. 6, 7, 8, and Ex. 9, p. 1), as the D.C. Circuit has confirmed. *Beck*, 2011 WL 318403 at *1, n. 1. They are under no obligation to repay any attorneys' fees to counsel or Singh, the person directing and funding this litigation. (Doc. 157, Ex. 2 at 147; Doc. 157, Ex. 3 at 121-22; Doc. 157, Ex. 1 at 270).

The relationship between Singh, Zavareei, and lastly, the Plaintiffs, smacks of champerty, maintenance, and barratry.[15] This festering tripartite pact has been the lifeblood of this suit,

---

[15]    Champerty "is a species of maintenance, ... being a bargain with a plaintiff or defendant campum partire, to divide the land or other matter sued for between them, if they prevail at law; whereupon the champertor is to carry on the party's suit at his own expense." *Sprint Communications Co., L.P. v. APCC Services, Inc*., 554 U.S. 269, 307, n.3, 128 S.Ct. 2531 (2008) (citing 4 W. Blackstone, Commentaries *134–*135). Blackstone defined maintenance as the "officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it." *Id*. "Put simply, maintenance is

providing the foundation of a business competitor's proxy war through straw parties.  It weighs heavily against a fee award or justifies but a nominal one.  Proof of a champertous agreement is pertinent to the determination of an attorney fee award.  *Magida v. Continental Can Co*., 231 F.2d 843, 848 (2d Cir.), *cert. denied*, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1117 (Colo. 1996) (interpreting fee-shifting provision, court can consider nature of compensation arrangement in determining whether to grant fees and in determining a reasonable award).  *See also Newman v. State of Alabama*, 522 F.2d 71, 80 (5th Cir. 1975) (Gewin, J., dissenting) (courts should eschew "any procedures that smack of champerty and maintenance" in assessing reasonable attorney fee).

Arrangements of this ilk, and the resulting waste of resources they spawn, are highly offensive to public policy.  They do not advance the fundamental purpose of fee-shifting provisions and indeed are counter-productive to the DCCPPA's laudable goals.  Allowing recovery of attorneys' fees here permits "officious intermeddling" speculators and financiers like Singh, not subject to the discipline of the Court, to instigate litigation in furtherance of collateral and competitive business interests.  Thus, an award indirectly reimburses and benefits Singh for financing and directing a lawsuit he lacks standing to bring himself because he is not a consumer.

Further, the present arrangement puts Singh's and counsel's interests above, and in conflict with, those of the *clients*, the Plaintiffs.  At no time were these divergent interests more acute and apparent than in 2005.  Then, Plaintiffs had $5,000 each in hand but lost that value

---

helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty."  *In re Primus*, 436 U.S. 412, 425, n.15,  98 S.Ct. 1893 (1978).  Generally, common law champerty exists when:  (1) the attorney's fee comes from the recovery in a successful lawsuit; (2) the lawyer has no independent claim to the recovery fund; and (3) the costs and expenses must be borne by the attorney with no expectation of reimbursement from the client.  *Marshall v. Bickel*, 445 A.2d 606, 609 (D.C.1982); *Johnson v. Van Wyck*, 4 App.D.C. 294, 315 (1894).  All of these elements are present here.

because Singh and his attorney insisted upon stopping Test Masters' valid use of the "Test Masters" mark, even though the Fifth Circuit told Singh *three years* earlier he possessed no federally protected rights in the mark.   *Test Masters Educ. Servs., Inc. v. Singh*, 2002 WL 1940083 (5th Cir. 2002).   He further made a $300,000 monetary demand that was so high under the circumstances that no reasonable defendant would accept it, thereby ensuring the perpetuation of litigation for *Singh's* and *his attorney's* benefit—at a $3,500 cost to each Plaintiff.[16]   Now, these Plaintiffs have recovered but a fraction of the amount they could have had nine years ago.   Although fee shifting should reward success, it should with like compulsion condemn the pursuit of meritless litigation driven by greedy miscalculation or competitive considerations collateral to the lawsuit itself.

A fee shifting award in these circumstances has no defensible anchor in equity principles. Plaintiffs' firm is not a "public interest firm" or a "non-profit legal services organization."   It is not representing Plaintiffs pro bono.   It has charged Singh what counsel contends are hourly market rates which have been paid at least for the significant majority of this case by Test Masters' direct competitor.[17]   Further, the claimed fees here are not "accruing to counsel."   By

---

[16]   The irrefutable fact that the value of the Plaintiffs' claim was diminished, not enhanced, by their attorney's pursuit of this action after he rejected the 2005 settlement offer further confirms that goals unrelated to benefitting these Plaintiffs drove this litigation from inception.

[17]   Plaintiffs argue Singh is no longer paying fees, though they admit Singh did pay all fees and costs at least through the summer of 2010.   But Plaintiffs' counsel's statement: (a) is supported by nothing but his own assertion, (b) is offered without any documentary support or supplemental discovery to contradict the existing and undisputed contractual evidence, and (c) suggests Singh is in breach of his existing contractual obligation to pay for this proceeding.   Counsel wants Defendant—and this Court—to take him at his word, but his prior representations to the Court about his relationship with Singh have already proven inaccurate.   For example, at the November 4, 2011 hearing, Plaintiffs' counsel told the Court that Singh was a "former" client (Doc. 100, p. 15), but when the undersigned sought to confirm that Mr. Zavareei was no longer representing Singh in the trademark dispute in Houston, Singh insisted that Mr. Zavareei continued to represent him.   (Doc. 174, Ex. 40).   Plaintiffs—that is, Singh, who is managing the strategic direction of this case—may be telling the Court that Singh is no longer paying the bills (in violation of their contract) simply to create an illusion of separation between Singh and these Plaintiffs.   Singh also may be withholding payment until the conclusion of the case, waiting until

the undisputed evidence, any fees would accrue to Test Masters' competitor, Singh, who plainly lacks standing to claim them under the DCCPPA.  And there is no evidence that any Plaintiff would have brought this lawsuit had they not been contacted by Singh and been offered to appear at no cost to them.

**5.      Plaintiffs have incurred no fees, bore absolutely no risk, and have no need for compensation.**

  a.  <u>Plaintiffs took no risk and have no need for compensation</u>.

  The existence and nature of the funding scheme for this suit raises a host of obstacles for fee shifting apart from its inherent offensiveness.  First, there is no *need* for compensation here. Plaintiffs undertook no risk whatsoever.  The quantum of financial risk (as well as any other risks) undertaken by party plaintiffs can and should be considered by the trial court in assessing whether or not to grant attorney fees.  *City of Wheat Ridge*, 913 P.2d at 1117.  The retention agreements unambiguously and conclusively prove that the three Plaintiffs owe nothing for fees or expenses regardless of the outcome.  Moreover, the claimant's need for compensation is a relevant factor in whether to award fees.  *ABC, Inc. v. Primetime 24*, 67 F. Supp. 2d 558, 562-63 (M.D.N.C. 1999).[18]  These Plaintiffs clearly have none.  A non-party is the only person incurring fees and he lacks standing under the DCCPPA to recover them.   Singh agreed to pay Mr. Zavareei's firm to fund this proceeding, and in fact *has paid* Plaintiffs' counsel an amount *well beyond* what was needed to develop any evidence supporting the Court's statutory damage

---

then to reimburse counsel.  The answers to these questions are unknown because Plaintiffs have failed to comply with their discovery obligations to produce all documents pertaining to Singh's payment of their fees.  Nor has Plaintiffs' counsel produced an amended retention agreement between itself and Singh, so the Court is certainly justified in presuming one does not exist. Plaintiffs' counsel also claims to have charged "discounted" rates to Singh, but no discovery or evidence has been produced to support that contention.

[18] The need to compensate plaintiffs is one of several factors considered in the Fourth Circuit, also including the plaintiffs' motivation and the objective reasonableness of the legal and factual positions taken.  *ABC, Inc.*, 67 F. Supp. 2d at 562-63.  Application of these or similar factors do not support an award of any fees or costs to the Plaintiffs.

award.  To the extent Singh stopped paying, Mr. Zavareei can sue him for breach of contract.  It is neither the defendant's burden, nor the purpose of fee shifting statutes, to subsidize champertous relationships that ultimately break down.  *See supra* at p. 20, n. 17.

      b.    <u>Plaintiffs have not incurred fees.</u>

Moreover, Plaintiffs are not entitled to attorneys' fees or costs because they have not, and will not, incur any.  To potentially recover reasonable attorneys' fees under the Code, the claimant first must have standing to enjoy the Code's benefits and, second, the claimant must have actually incurred fees.  Under D.C law, consumers who have not incurred attorneys' fees are not entitled to recover them, even if a violation of the Code occurred.  *See Osbourne v. Capital City Mortgage Co*., 667 A.2d 1321, 1330-31 (D.C. 1995) (to be entitled to award of enumerated damages under the Code [*i.e.* attorney's fees, actual and punitive damages], plaintiff must establish he or she suffered those damages as a result of the defendant's violative acts).  *See also Athridge v. Aetna Cas. & Sur. Co*., 163 F. Supp. 2d 38, 56 (D.D.C. 2001), *aff'd in part, rev'd in part on other grounds*, 351 F.3d 1166 (D.C. Cir. 2003) (plaintiff not entitled to attorneys' fees for claims of misrepresentations or omissions when plaintiff's attorney fees had been paid not by client, but by his parents).  In language applicable to the present matter, *Athridge* held the plaintiff was not entitled to an award of attorneys' fees because he had not been harmed by any misrepresentations made to him.[19]  Here, Plaintiffs have not "suffered" or "incurred" any fees or costs as a matter of law.

Other jurisdictions construing comparable consumer protection statutes likewise require

---

[19]    "[Plaintiff] Jorge, an impecunious high school dropout, obviously **suffered no damages by virtue of any of the misrepresentations or omissions charged in the complaint**. He has never paid a penny of Judge Greene's damage award and it has now been discharged in bankruptcy. His parents paid Irving Starr, the lawyer who represented him. Thus, **Jorge suffered no actual damages from anything Aetna is said to have done to him or failed to tell him**. The Athridges's complaint, based on its assignment from him, therefore fails as a matter of law even if the Act was applicable to the relationship between Aetna and Jorge." *Id*. (emphasis added).

fees to be "incurred" as a prerequisite to recovery.  *See, e.g., Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 474 (5th Cir. 2002) ("the MMWA creates a statutory cause of action for consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed by the Act] or [established by] a written warranty, implied warranty, or service contract.' … [U]nder the MMWA … consumers are permitted to recover reasonably-incurred costs and expenses, including attorneys' fees, if they prevail in such suits. 15 U.S.C. § 2310(d)(2)."); *Greycas, Inc. v. Ocean Transport Ltd. No. 1*, 52 F.3d 1067, 1995 WL 241777, at *1 (5th Cir. 1995) (recoverable fees limited to those "incurred"; interpreting Texas Deceptive Trade Practices Act); *Horn v. F.D.I.C.*, 2011 WL 6132309, at *2 (D. Md. 2011) (refusing attorney fee award because plaintiff had not incurred fees); *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wash. App. 666, 285 P.3d 892, 899-900 (Wash. App. Div. 1 2012) (consumer protection act required fees to be incurred to be recoverable); *Rowse v. Platte Valley Livestock, Inc.*, 597 F. Supp. 1055, 1062 (D. Neb. 1984) (interpreting Packers and Stockyards Act, 7 U.S.C. § 210(f), to authorize only fees "incurred").  These same principles apply to the DCCPPA.  Fees not "incurred" by claimants are not recoverable.

This reasoning is not materially different from that used by courts rejecting fee awards for pro se plaintiffs.  *E.g.*, *Tindall v. One 1973 Ford Mustang*, Nos. 07-1885, 07-1946, 2009 WL 484592, at *2 (6th Cir. 2009) (unpublished).  In cases like *Tindall*, courts have rejected legal fees when they are "not truly a 'cost' of the litigation", such as here.  *See Upson v. Wallace*, 3 A.3d 1148, 1166 (D.C. 2010) (context of Rule 11 fees to pro se litigant).  It makes sense that fees are not recoverable when plaintiffs have not paid an attorney to pursue the complaint.  *See id*. Understandably, the DCCPPA presupposes a paying attorney-client relationship.  At a minimum, the Code certainly does not contemplate the creation and perpetuation of corporate financed litigation against industry competitors.

c. <u>Plaintiffs have waived any claim to fees, and the intended beneficiary of a fee award is a non-party who lacks standing.</u>

In addition to incurring no fees or costs, these Plaintiffs have gone so far as to completely abandon and relinquish any right to fee recovery at all, thus *waiving* any claim to attorneys' fees they may have had. (Doc. 157, Exs. 6, 7, 8). The Plaintiffs have given up all rights to fees or costs and agree that they are not incurring them. The contracts signed by each Plaintiff explicitly provide that any award of attorneys' fees "will be paid to [Singh]." (*Id.* at p. 2). Perhaps Singh is incurring or has incurred attorneys' fees, but Singh is not a plaintiff—it has no standing to be a plaintiff [20]—and no provision in the Code permits recovery of attorneys' fees based on fee payments by non-party financiers. Singh may have chosen voluntarily to spend its money on satellite and harassing litigation to advance its private interests against its competitor, but that decision does not entitle non-parties who lack standing under the Code to recover fees (or benefit from a fee award) in the stead of those named parties possessing standing but clearly not incurring them. The Plaintiffs are simply Singh's pawns used in an attempt to reap statutory benefits and remedies Singh itself has no standing to claim, thereby accomplishing indirectly what Singh cannot accomplish directly. It is the *party* who possesses an entitlement to fees, *Astrue v. Ratliff*, 560 U.S. 586, 130 S.Ct. 2521, 2529 (2010), not the attorney, and certainly not third party litigation financiers. The *plaintiffs* to this suit do not have a right to fees and those other persons who are driving this litigation lack standing. There is no basis in the Code for this type of attempted fee-shifting.

---

[20] Singh has no standing and no rights under the DCCPPA because, among other things, it is not a "consumer." D.C. Code § 28-3901(a)(2); *Cronin v. Adam A. Weschler & Son, Inc*., 2012 WL 5563762, at *6 (D.D.C. 2012).

      d.     <u>There exists no live controversy regarding fees because Plaintiffs bargained away any right to fees</u>.

The Plaintiffs' undisputed lack of interest in the fee issue begs the question whether a live controversy exists capable of supporting jurisdiction over an attorney fee claim at all. These Plaintiffs have no legally cognizable stake in the outcome with respect to attorneys' fees. Plaintiffs bargained away their right to attorneys' fees, which was their choice. Having done so, they maintain no legally cognizable interest in the outcome. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 341, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y.2000) (finding that a case is moot if plaintiff has been offered all that he could hope to recover). Thus, jurisdiction is absent.

**6.    Plaintiffs have not produced documents or designated witnesses to support their fee request.**

Even assuming the Court reaches the point of reviewing billing records for reasonableness, it will find that the function Plaintiffs are asking it to perform is substantially impeded, if not rendered impossible, by Plaintiffs' failure to produce or offer the actual billing records supporting their claimed fees. Given the nature of retention agreements, it is perhaps not surprising that Plaintiffs' counsel wants to present the Court with post-hoc and non-contemporaneous hearsay, selectively offering "excerpts" of descriptions of work that cannot be verified by review of actual billing records. In all events, the exhibits upon which Plaintiffs rely to support their fee request are neither admissible nor sufficient to meet their burden.

      a.     <u>Plaintiffs fee submission is facially deficient</u>.

Defendant objects to Doc. 221-1 (which includes from Plaintiffs' first fee petition the following Exhibits: Docs. 203-3, 203-4, 203-5, 203-6, 203-7, 203-8, and 203-9) because the accompanying declaration does not provide adequate testimony authenticating these documents. FED. R. EVID. 901. With respect to these exhibits, counsel avers they are "excerpts," "extracts,"

or, generally re-created after-the-fact documents from actual invoices and pre-bills. (*See* Doc. 203-1). These documents do not constitute valid evidence of fees or expenses. As explained below, Plaintiffs have not produced or filed contemporaneously maintained fee invoices. Defendant objects to these exhibits to the extent they are portions of actual invoices or pre-bills. Defendant is entitled to review the actual invoices that were sent to Singh—all of them—as well as the purported "pre-bills," so that it can verify work was actually incurred as reflected on contemporaneous records. As Plaintiffs produced no original fee invoices or pre-bills, Mr. Zavareei's testimony is insufficient. *See* FED. R. EVID. 1006.

Further, these documents cannot qualify as authentic business records. *See* FED. R. EVID. 902(11). The lack of supporting documentation and the invoices/pre-bills themselves, raises the highly likely potential that, the fees requested were not in fact incurred in the amounts and at the times claimed, but rather have been embellished, created, or otherwise manipulated solely for the purpose of the Petition. Without providing Defendant, and the *Court*, access to the actual invoices, Plaintiffs cannot meet their evidentiary burden. As a result, Doc. 221-1 (including Docs. 203-3, 203-4, 203-5, 203-6, 203-7, 203-8, and 203-9), as well as Plaintiffs' supplement declaration and fee "extracts" post-January 2014 (Docs. 221-2, 221-4, and 221-5), are incompetent evidence and cannot support Plaintiffs' attorney fee claim. Again, Defendant is entitled to review the actual invoices and pre-bills. FED. R. EVID. 1006. Defendant further objects because these documents purport to be summaries of incompetent evidence, and thus are themselves incompetent.

     b.    <u>No contemporaneous time records</u>.

Plaintiffs have not produced, or filed with the Court, contemporaneous time records. *In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989). They were required to produce such records under Rule 26, FED. R. CIV. P. 26(a)(1)(A)(i)-(iii), and in response to TES' request for

production.   Defendant's Request for Production No. 142 requested "documents or tangible things which reflect any payment of attorneys fees or expenses related to this lawsuit."  (Doc. 206, Ex. A, at 51).   Though Plaintiffs' response to request no. 142 said they would supplement with records relating to attorneys' fees, to this day they have never produced any attorney fees invoices, pre-bills, or any other documentation supporting a request for fees.  Plaintiffs have an ongoing obligation to supplement their initial disclosures.   *See* Fed. R. Civ. P. 26(e)(1)(A). Plaintiffs also have an obligation to supplement responses to requests for production.  Plaintiffs did not even mention attorney fee documentation in their list of information that they may use to support their claims or defenses.  (Doc. 206, Ex. B [Plaintiffs' Supplemental Initial Disclosure, August 27, 2008]).   Likewise, Plaintiffs did not list Tycko & Zavareei LLP, or any individuals with the firm, as possessing discoverable information that they may use to support their claims or defenses.  (*Id.*)   Failure to produce and offer contemporaneous records renders meaningful scrutiny of reasonableness an impossible endeavor.   Submission of "excerpts" and pieces of invoices or pre-bills is simply not sufficient in a case such as this.

Because Plaintiffs did not produce supporting information on attorneys' fees, Plaintiffs "evidence" must be excluded and no fees awarded.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party failed to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless."); *Norden v. Samper*, 544 F. Supp. 2d 43, 50 (D.D.C. 2008) ("Sloppy responses to the opposing party's discovery do not constitute substantial justification.").[21]   And no finding of "substantial justification" is supportable here because Plaintiffs' failure to disclose this information fatally prejudices Defendant's ability to verify and cross examine the content of the invoices/pre-bills compared to

---

[21]      TES has no duty to compel the Plaintiffs' compliance with disclosure obligations.

the "excerpts", "extracts", and "summaries" Plaintiffs submit with their petition.  *See Hensley*,

461 U.S. at 441 (Burger, J., concurring).

Plaintiffs have submitted nothing more than spreadsheets created by their attorney after

the fact and only for the purpose of seeking grossly exaggerated or unreasonable fees, without

submitting or producing to Defendant a shred of actual and contemporaneous billing records

showing the rates charged, the services performed, and the performing attorneys.  The Plaintiffs'

chosen method of "proving" attorneys' fees by concealing the actual documentary evidence of

fees to prevent scrutiny of them, and instead manufacturing spreadsheets purporting to excerpt or

summarize attorney work that cannot be verified or examined by the Defendant *or the Court*,

could not be more prejudicial to the rights of TES—the party being asked to pay for attorneys'

fees.   Failure to produce contemporaneous billing documents prevents the Court from

concluding, to the "high degree of certainty" required, that the claimed hours were "actually and

reasonably expended."  *See Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C.

Cir. 2004); *Queen Anne's Conservation Ass'n v. United States Dep't of State*, 800 F. Supp. 2d

195, 199 (D.D.C. 2011).

Apparently to garner goodwill from the Court, Plaintiffs' counsel also claims he has

exercised his "discretion" to make certain billing cuts.  But Plaintiffs' failure to offer actual

invoices detailing which entries were "cut" and why confounds any reasonable ability to

scrutinize or verify his claims.  Plaintiffs have not presented those entries to the Court in the

form of contemporaneous records, which begs the question whether Plaintiffs have actually "cut"

anything, or are just saying they did.

Defendant's concern is particularly amplified in the present case, considering the nature

of this dispute and the dubious fee arrangements, including the fact that substantial attorneys'

fees have undisputedly been paid by a third party competitor.  Test Masters is entitled to see

every billing record, every single invoice, proof of payment (or non-payment) by Singh, and all other documents and communications related thereto. Plaintiffs' failure to disclose the required information is neither "substantially justified" nor "harmless" and results in exclusion of all proffered evidence. The Court should disregard and strike all of Plaintiffs' proffered support for the fee petition.

       c.     <u>No experts designated on attorneys' fees</u>.

The only witness offered to support Plaintiffs' fee petition is their counsel. But Plaintiffs never designated Mr. Zavareei or anyone else as an expert witness on the issue of attorneys' fees. (Doc. 206, Ex. C [4:04-md-1646, Doc. 286]).[22]   Thus, he is precluded from offering testimony in support of attorneys' fees. *See* FED. R. CIV. P. 26, 37(c)(1). The Court should strike Mr. Zavareei's declarations and all documents purportedly authenticated and attached thereto because they may not be considered. *See Harvey v. Mohammed*, 941 F. Supp. 2d 93, 100 (D.D.C. 2013) (excluding expert witness for failure to comply with Rule 26); *Blake v. Securitas Sec. Services, Inc.*, 292 F.R.D. 15, 19 (D.D.C. 2013) (same).

       d.     <u>Plaintiffs have not segregated to account for fees incurred for unsuccessful claims</u>.

Plaintiffs notably failed to segregate fees relating to the single DCCPPA on which the Court awarded statutory damages from those fees relating to all other claims on which they lost or for which fees are not recoverable. This shortcoming likewise supports rejection of their petition. A fee applicant bears the heavy obligation to present well-documented claims. *Kennecott Corp. v. E.P.A.*, 804 F.2d 763, 767 (D.C. Cir. 1986) (per curium). Here, Plaintiffs make no effort to reduce fees for the many liability and damage claims they lost, such as the fraud and misrepresentation claims, or the injunction claim, or the "general public" claim, or the

---

[22]    This cause number is the number assigned to this matter while consolidated for discovery purposes in the United States District Court for the Southern District of Texas.

claims for compensatory damages, punitive damages, "loss of life opportunities" damages, and disgorgement of profits.  In fact, they specifically ask for fees that this Court and the appellate court have previously denied.[23]  As attorney fee submissions are not to burden the court with additional mini-trials, this Court should completely disregard Plaintiffs' fee submission for their failure to attempt to segregate.  It is neither this Court's nor Defendant's obligation to divide Plaintiffs' fees between its successful and non-successful claims and requested, but denied, relief.  Based on the inadequacy of the submission and the inability to recover for unsuccessful claims, Plaintiffs' requested attorney fees should be denied. *See Kennecott Corp.*, 804 F.2d at 766 (per curium); *Sierra Club v. E.P.A.*, 769 F.2d 796, 801-02 (D.C. Cir. 1985).

Given the lack of probative evidence and Plaintiffs' complete failure to segregate their requested time in acknowledgement that they lost on the overwhelming majority of their liability and damage claims, the Court need not undertake the arduous burden of attempting to identify specific hours that ought to be eliminated.  It can "simply reduce the award to account for the limited success." *Nelson*, 967 F. Supp.2d at 364, n. 2.  It should not hesitate to do so.

Based on all reasons discussed in this response, the purported time reflected on 221-1 should be disallowed or substantially reduced.

    e.    <u>Defendant further objects to Plaintiffs' supplemental "extracts" purporting to reflect time since January 2014</u>.

The Court should disallow all or the vast majority of the time included in Exhibit 2 to Plaintiffs' Petition because, as with all other requested fees, Plaintiffs lost on the overwhelming majority of work which is described therein.  For example, all the work reflected on those "extracts" which pertained to Plaintiffs' motion for injunctive relief is not recoverable because the Court ruled against them on that issue.  In fact, Plaintiffs' reply brief on the question of injunctive relief was so misleading that it was necessary for Defendant to file a sur-reply to

---

[23]    *See infra* at p. 31.

ensure the Court had a clear understanding of the true facts.  (Doc. 208).  Plaintiffs filed a motion to strike the sur-reply (Doc. 211), but the Court rejected the motion to strike and granted leave to file the sur-reply.  (Docs. 216, 217).  Plaintiffs' Exhibit 2 seeks recovery of fees for all that work, which they know the Court denied.[24]  They make absolutely no effort to segregate it.

Their Exhibit 2 also includes their alleged fees relating to Defendant's appeal from the December 18, 2013 order.  (Doc. 221-4, at pp. 2-6).  Yet, Plaintiffs previously requested these very fees from the Court of Appeals, which denied them.  (Exs. 8, 9).  They are not entitled to recover them here after having been denied once by the appellate court.

**7.    Plaintiffs have asserted objectively unreasonable legal and factual positions, and unnecessarily multiplied these proceedings.**

Finding no legitimate justification for the exorbitant amount of fees they claim, Plaintiffs blame TES for the waste of resources Singh's charade has necessitated.  Plaintiffs are forgetting that *they* agreed to file suit at Singh's direction.  They are forgetting that, *before* any discovery occurred in 2005, they chose to reject a settlement offer of $5,000 each—more than four times what they paid for the course they completed, and three times their ultimate relief.  Instead, they demanded $100,000 per Plaintiff.  (Exs. 1, 2) (also filed at Docs. 65-1, 65-2).

The unrealistic costs of this case fall squarely at the doorstep of Singh and his counsel. The record soundly evidences Plaintiffs' overall lack of appreciation for the rules of civil procedure and their repeated disregard for the orderly process of justice, needlessly increasing the time and expense necessary to defend this case.  Plaintiffs have repeatedly taken actions which required TES to expend unnecessary time and money and for which they alone should be held responsible.  *See United States v. Wallace*, 964 F.2d 1214, 1220-21 (D.C. Cir. 1992).  Some of the offending conduct has already been outlined in TES' prior briefing before this Court was

---

[24]    Plaintiffs' work regarding Defendant's sur-reply and the motion to strike it appears on Plaintiffs' Exhibit 2, at p. 4.

assigned to the case.  But for the Court's edification, Test Masters summarizes some of the more significant and egregious examples of Plaintiffs' counsel's gamesmanship, objectively unreasonable positions, or simple failure to comply with the rules of procedure:

a.    Expert witnesses.  Plaintiffs did not produce expert reports or otherwise disclose any expert opinions at the time of their designations, in clear violation of Rule 26. (No. 4:04-md-1646, Doc. 198).  When they ultimately served reports, they were facially deficient and objectionable under *Daubert*.  Further, the experts added nothing of relevance to the claims and Plaintiffs did not even rely on them in any of the multiple rounds of summary judgment briefing.  Plaintiffs' conduct necessitated the preparation and filing of multiple motions by Test Masters challenging their experts, as well as the unnecessary expense of designating a counter-expert.  (No. 4:04-md-1646, Docs. 232, 235, 248, 264).  Judge Gilmore conditionally granted Test Masters' motion to strike Plaintiffs' experts, but allowed additional time to file corrected reports.  The new designations were still insufficient (Doc. 206, Ex. C), and, as mentioned above, made no designation of an expert on attorneys' fees.  Lastly, of course, the experts Plaintiffs designated were intended to speak only to the damage claims for "lost employment opportunities" that Plaintiffs lost on summary judgment in 2009.  It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

b.    Production of the fee agreements.  Plaintiffs initially refused to produce copies of the retention agreements applicable to this case in unredacted form, in an attempt to conceal material terms of the agreements.  Test Masters was forced to file a motion to compel their production.  (No. 4:04-md-1646, Doc. 215).  The agreements are material to the case because they confirmed Singh's funding of,

and control over, this matter.   Test Masters attached the agreements to its summary judgment motion.  It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

c.     <u>Protective order</u>.  To streamline discovery, Test Masters originally proposed a standard, boilerplate protective order.   Plaintiffs' counsel transformed the straightforward process of agreeing to a simple protective order into an unreasonably protracted dispute over his requested provisions which were intended to create loopholes, allow sharing of confidential information with Mr. Singh (again, confirming Singh's hands-on involvement in the case), impose unreasonable burdens on Test Masters to protect its confidential information, and overly complicate the document production process which protective orders are designed to simplify.  Test Masters ultimately had to seek relief from the court, after weeks of wasteful attempts to reach agreement on Plaintiffs' unreasonable positions.   (No. 4:04-md-1646, Doc. 168).   The court granted Test Masters' motion.  (No. 4:04-md-1646, Doc. 209).  It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

d.     <u>Reddy's attempt to unilaterally non-suit her claims</u>.  On May 29, 2008, Plaintiff Reddy filed a "Notice of Voluntary Dismissal With Prejudice," in an attempt to unilaterally non-suit her claims.  (No. 4:04-md-1646, Doc. 231).  Plaintiffs did not conference before filing the "dismissal" and Test Masters opposed dismissal absent imposition of conditions under Rule 41(a)(2), specifically reimbursement of a portion of Test Masters' fees and expenses.  (No. 4:04-md-1646, Doc. 234). Test Masters sought fees under Rule 41 because, among other things, the assertion of Reddy's claim caused Defendant to incur substantial legal fees and costs.  With

absolutely no regard for the significant time and expense committed to this litigation, and without regard for Rule 41's express terms (which do not allow unilateral dismissal by a plaintiff), Reddy's counsel (or Singh) wanted to dismiss an action that never should have been filed and just walk away. Within twenty-four hours of Defendant's filing its opposition to the "dismissal," Reddy withdrew it, no doubt concerned about the imposition of conditions under Rule 41. (No. 4:04-md-1646, Doc. 236). Test Masters, of course, had to incur the cost of preparing an opposition to a document that Reddy then immediately withdrew. All of this shows that Reddy was fully prepared to non-suit without fees, and she should not get any now. It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

e.     Plaintiffs' post-MDL remand conduct. After the MDL Panel remanded this case from Houston back to D.C., the Court held a status conference on May 11, 2009, during which counsel for all parties discussed the pendency of the Defendant's motion for summary judgment. Plaintiffs' counsel made no objection to consideration of the summary judgment motion. But shortly after the conference, Plaintiffs filed a "motion to strike" Defendant's long-pending motion for summary judgment (to which Plaintiffs had fully responded). (Doc. 22). There was no valid basis to strike Defendant's motion, but Defendant had to prepare a response. This Court denied the motion to strike and ordered the parties to re-file their briefs supporting and opposing Defendant's Motion for Summary Judgment and any attachments. (Doc. 25). The court then granted Test Masters' summary judgment motion in full. It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

f.   Plaintiffs' attempt to "re-open" discovery.   Together with its motion to strike Defendant's summary judgment motion, Plaintiffs filed a motion requesting the Court to reopen certain discovery issues in 2009.  Of course, Plaintiffs' counsel had previously informed the Houston judge, on September 23, 2008, that "discovery has ended in this case."   (Doc. 23, Ex. A).   Though Plaintiffs purported to assert complaints that they were prevented from adequately responding to the summary judgment motion due to lack of discovery, Plaintiffs clearly did not comply with Rule 56(f) in responding to the summary judgment motion.  Having failed to timely and properly invoke Rule 56(f) when filing the summary judgment response, Plaintiffs' counsel submitted an affidavit to the Court purporting to be a Rule 56(f) affidavit in May 2009, many months after the summary judgment response was filed and the discovery deadline passed.   The court denied this motion, but TES had to respond.  It is unreasonable to force Test Masters to reimburse Singh for any of this conduct.

g.   "Motion for Terminating Sanctions."   Plaintiffs' "motion for terminating sanctions" (Doc. 34)—forty-six pages long with hundreds of pages of exhibits— was repetitive of relief the Court had just denied weeks earlier and wasted valuable resources of the parties.   Also, Plaintiffs filed the motion the week before Christmas 2009, in an obvious attempt to impede Defendant's ability to respond over the holidays.   The motion was filed a full eighteen months after the discovery deadline.   Further, Plaintiffs' motion was nothing more than an impermissible and indirect effort to enhance their opposition to summary judgment, after having failed to comply with Rule 56(f).  Defendant was put to the significant expense of responding to this motion, which appeared to be

designed as an additional means to distract the Court from addressing the pending summary judgment motion.

These are just examples of the haphazard and reckless manner in which Plaintiffs, Singh, and their counsel have approached this case, which is indicative of indifference to the facts, law, and rules of procedure.   Despite these events, Plaintiffs have the audacity to argue that it is Defendant's fault that they supposedly incurred, but have not proven, such a grossly excessive amount of attorneys' fees and that Test Masters should pay for it.   Plaintiffs' counsel has needlessly multiplied these proceedings and unreasonably increased the amount of work necessary to defend the case.   Further, Plaintiffs' counsel's penchant for making incorrect statements in motions and other court filings (which continues to this day) necessitated greater effort and expense by Test Masters than should ordinarily be required in filing repeated reply briefs to correct counsel's misleading statements.   Hours that are duplicative, excessive, unproductive, and unnecessary must be subtracted from any fee award. *Public Interest Research Corp. v. Windall*, 51 F.3d 1179, 188 (3d Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). *See Hensley*, 461 U.S. at 434.   All of the Plaintiffs' conduct outlined above qualifies as non-recoverable time.

In contrast to Plaintiffs' litigation strategy, Defendant has steadfastly sought expeditious disposition of this case.   In early 2005, the case was consolidated by the Multi-District Litigation Panel with other related litigation pending in the U.S. District Court in Houston.   (Docket entry dated March 18, 2005).   Before the start of discovery, Defendant offered to settle for an amount now confirmed as patently reasonable.   Following the Plaintiffs' rejection of that offer, the court appropriately tailored discovery and oversaw the completion of discovery.   Defendant then moved for summary judgment and Plaintiffs fully responded.   The Houston judge did not rule on the summary judgment motion, but remanded the case back to D.C.

There, Defendant immediately requested the Court to consider the fully briefed summary judgment motions.  The Court did so and granted Test Masters' motion on all claims.  Plaintiffs appealed and the D.C. Circuit affirmed on all claims, with the exception of the DCCPPA claim, which was reversed solely on standing grounds.  Upon remand from the Court of Appeals, Test Masters requested the newly-assigned judge to simply re-consider the motions for summary judgment on the DCCPPA and the sanctions motions against the Plaintiffs.  There were no other issues to address at the time.  Instead, the court re-opened discovery to permit new inquiries into facts occurring for the a seven year time period from 2003 to 2010—the Plaintiffs took the LSAT course in 2004—based largely if not exclusively on the Plaintiffs' purported claims on behalf of the general public and for punitive damages—both claims this Court has rightly rejected as a matter of law.  Test Masters *opposed* any additional discovery for numerous reasons.  Defendant has continually sought summary disposition of this matter.[25]

Given the posture of the case, its history, and this Court's ruling, the fees requested are without question unreasonable.  The Court should exclude the all fees claimed by Plaintiffs under the multi-district litigation proceeding.  As discussed above, this does not relate to Plaintiffs claim under which they now claim to have "prevailed." Moreover, this period corresponds to the time during which Plaintiffs' counsel was paid by Singh.  Accordingly, the Court should deny completely the requested amount of $436,250.

Further, as the overwhelming majority of Plaintiffs' efforts allegedly post-Singh funding relate to establishing its now rightfully disallowed general public, injunction, and punitive damage claims, these too should be disallowed completely.  As stated above, much of Plaintiffs'

---

[25]    Plaintiffs cast aspersions at Test Masters for moving the court of appeals to summarily affirm Judge Robertson's summary judgment order in 2010.  But it is difficult to appreciate why such a request would be "meritless," considering Judge Robertson used that very term to describe the Plaintiffs' case.  (Doc. 48).  Hardly a "dilatory" tactic, Test Masters merely sought the fastest resolution possible, and with good grounds, considering the trial court's summary judgment order.

conduct from 2010 forward relates to claims or relief not granted, or was otherwise unproductive, unnecessary, and excessive. Defendant proposes, at least, a 95-99% reduction of all claimed fees from 2010 to the present. Similarly, Plaintiffs cannot recover their fees associated with their motions to compel as these, likewise, directly relate to this disallowed claim. Therefore, this Court should reject Plaintiffs' fee request of $34,153.65 related to discovery motions the prior judge previously denied. (Doc. 203, at 8-9).

Plaintiffs are also not entitled to recover any portion of attorneys' fees related to the appeal of the first summary judgment order or the appeal filed in 2013 of the Rule 37 fee award because the court of appeals already addressed and denied Plaintiffs' costs, and denied Plaintiffs' requested fees, in connection with those proceedings. (Doc. 206, Exs. F, G). For example, all re-created "time entries" appearing on Plaintiffs' re-created spreadsheets from March 2010 through March 31, 2011 (Doc. 203-3, at 64-67, and Doc. 203-4, Doc. 203-5, Doc. 203-6) should be disallowed. This is equally so for the claimed fees incurred in connection with the 2013 appeal. The same is true with respect to fees sought in connection with Defendant's appeal from this Court's December 18, 2013 order. Plaintiffs already requested those fees from the D.C. Circuit, and the court denied them. (Exs. 8, 9). Thus, all entries appearing on Doc. 221-4 relating to the appeal should be disallowed completely.

Defendant maintains its challenge to the rates charged. Plaintiffs' tortured application of the *Laffey* rates further calls into question their fee request. Plaintiffs use the rates under which their fees were granted for the motions to compel and rely on present *Laffey* rates for attorneys' whose time was not requested or considered in connection with the motions to compel. (Of course, Defendant continues to refute Plaintiffs' fee request in connection with the motions to compel for the reasons already before the Court. (Doc. nos. 125, 129)). Additionally, the requested rates are not reasonable under the present circumstances, where Plaintiffs' counsel has

38

been paid by a third party and there has been no showing as to what the fee agreement would have been had Plaintiffs' counsel pursued this case without Singh's involvement and direction.

**8.      Plaintiffs are not entitled to recover their expenses.**

Plaintiffs contend that their entitlement to costs arises out of the "other relief which the court deems proper" relief under the D.C. Code § 28-3905(k)(2)(F). (Doc. 221, at 7).   But the Court's judgment left for future consideration only Plaintiffs' request for attorney fees.   In any event, for the same reasons as their attorney fee requests, Plaintiffs' request for costs should be disallowed or substantially reduced to nothing more than a *de minimus* amount.

## PRAYER

THEREFORE, Defendant Test Masters Educational Services, Inc., respectfully requests this Court to deny "Plaintiffs' Petition For Attorney's Fees And Expenses Pursuant To June 20, 2014 Order" (Doc. 221) in all things, or alternatively to substantially limit any fees awarded to nothing more than a modest amount in consideration of the factors discussed herein.   Test Masters Educational Services, Inc. also requests any and all other general relief to which it may be entitled.

Respectfully submitted,

/s/ Kevin D. Jewell
Kevin D. Jewell
D.C. Bar No.: TX0053
Texas Bar No.: 00787769
Attorney-in-Charge

OF COUNSEL:
CHAMBERLAIN, HRDLICKA, WHITE,
   WILLIAMS & AUGHTRY
Charles T. Jeremiah
D.C. Bar No.: TX0059
Texas Bar No.: 00784338
1200 Smith Street, 14th Floor
Houston, Texas 77002
(713) 658-1818 - Telephone
(713) 658-2553 – Facsimile
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record by the means indicated below, on this 4th day of August 2014:

    *Via electronic service*:
    Hassan Zavareei
    Tycko & Zavareei, LLP
    2000 L Street, NW, Ste. 808
    Washington, D.C.  20036


               /s/ Kevin D. Jewell
               Kevin D. Jewell